## LAWRENCE vs. HEBBARD.

*In the matter of the Estate of* OLIVER HEBBARD, *deceased.*

A WILL executed previously to the Revised Statutes, although attested by only two witnesses, if the testator died after the statute went into effect, is sufficiently attested as a will of real estate.

In determining the construction of a will, the testator is presumed to have used words in their ordinary or primary sense, unless from the context it appears he intended to give them some other or secondary meaning.

The word *children* includes only immediate legitimate descendants, and not a *step-child*.

A devise or bequest to a designated individual, with a gift over in case of death, does not necessarily lapse, if the devisee or legatee die before the testator, but the ulterior gift takes effect on the testator's decease.

Where the testator had had eleven children, but at the time of the execution of

his will, one of them had died leaving issue, and the will directed the residue to be equally divided among the testator's " eleven children," and in case of the death of any of them, their portion to be divided among their children, if they should leave any.—Held that the children of the deceased daughter were entitled to one eleventh of the residue.

A. Thompson, *for Executors.*
W. C. Freeman, *for Legatees.*

The Surrogate. The testator devised and bequeathed all his real and personal property to his wife for life, and in case the income thereof should not be sufficient "to make her perfectly comfortable," he authorized his executors to sell as much as might be necessary "to supply her every want;" and at her death, he directed his property "to be sold and divided in the following manner, namely, I give to each of my daughters, and also my stepdaughter Elizabeth, $100 ; and the remainder of my property is to be equally divided among my eleven children, and in case of the death of any of my children, their portion shall be divided among their children if they have any, if not, it is to be equally divided among my other children," " but none of my heirs must have what this will allows them, until he or she shall have arrived at the age of twenty-one years, but if the executors think they need the interest, they can pay it to them."

The will was dated February 6th, 1828. The testator died in June, 1831, and the will was proved August 29th, 1831, as a will of real and personal estate.

The will being attested by but two subscribing witnesses, and having been executed when three witnesses were requisite to the validity of a will of real estate, it is suggested that, although the testator died after the Revised Statutes went into operation, the will is not valid as a devise of realty.

The provisions of the Revised Statutes in relation to the mode of executing a will, do not " *impair* " the validity of the execution of any will made before these statutes

went into effect (2 *R. S.*, 3*d* ed., *p.* 133, § 77 ; *In matter of Roberts' Will*, 8 *Paige*, 448), nor " *affect* " the construction of any such will.   A careful distinction seems to have been made in the phraseology of the section of the statute relating to such previous wills.   Their construction it is declared shall not be *affected* by the subsequent statute, that is, not changed or altered ; but in relation to the mode of execution, the language is, that the new provisions shall not be construed to *impair* the validity of any will made before. Now as a will is ambulatory, and takes effect only on the decease, it is competent for the Legislature in changing the formalities requisite to the due execution of a will to affect every instrument then executed, but which has not yet come into operation by the death of the testator.   The law, therefore, wisely provided that the validity of wills already executed, should not be impaired by the new provisions of the Revised Statutes, but it stopped at that point, thus leaving to wills executed before, the benefit of the change, so that if bad by the law existing at the time of their execution, they might be cured and become valid by the law existing at the time of the death of the testator. If the testator had died previous to the Revised Statutes, the case would of course have been otherwise (*Jauncey* vs. *Thorne*, 2 *Bar. Ch. R.*, 50), but his decease subsequent to the new law going into effect, attaches the benefit thereof to his will, and aids, though it may not impair the validity of its execution.   (*De Peyster* vs. *Clendining*, 8 *Paige*, 304 ; *Bishop* vs. *Bishop*, 4 *Hill.*, 138.)   I think, therefore, although this will was attested by only two witnesses instead of three, as required by law at the time of its execution, in order to pass real estate, that still by the decease of the testator after the Revised Statutes took effect, the defect was cured, and the will was properly admitted and recorded as a valid will of real estate by the late Surrogate.

The testator's daughter, Dorothy, died in 1827, leaving issue ; and at the time the will was executed, the testator

had ten children living, and also his stepdaughter, Elizabeth. The testator directed the residue of his estate to be divided among *his eleven* children, and in case of the death of any, their portion to be divided among their issue. Elizabeth, the stepdaughter, claims a child's share. The rule on this subject is, that the testator must be presumed to have used words in their ordinary or primary sense, unless from the context it appears that he intended to give them some other or secondary meaning. The word children includes only the immediate legitimate. descendants, and not a step-child. (*Cromer* vs. *Pinckney*, 3 *Bar. Ch. R.*, 466; *Howe* vs. *Van Schaick, Ibid.*, 488; *Mowatt* vs. *Carow*, 7 *Paige*, 339.) There is nothing in this will to show the intention to use the phrase "children" in any other than its natural sense. On the contrary, the necessity of expressly mentioning his stepdaughter Elizabeth, in order to entitle her to a legacy of $100, given to each of his daughters, appears to have been present to his mind. He says, I give to "each of my daughters, and also my stepdaughter Elizabeth, $100 ;" a clear instance of the existence in the mind of the testator, of a proper legal distinction between a child and a step-child. The definition here affixed by him to the term "daughter," excludes a stepdaughter, and so coincides with the legal definition. Doubtless a word may be used in a peculiar manner, or be so placed in relation to other terms, as to indicate a meaning different from its usual and natural signification. (*Cutter* vs. *Doughty*, 7 *Hill.*, 314.) But that is not the case here. If the stepdaughter had not been mentioned in the will, she would not have had a shadow of claim as a daughter or a child to the legacy of $100, or to a share in the residue. The fact that she is mentioned conjunctively with daughters (not synonymously) in relation to one gift, makes the case still stronger against her, if possible, in regard to a bequest in which she is not so named. I must construe the word, "children," as the testator defined the term "daughter," and hold it not to include a stepdaughter. I find no

decision conflicting with this view. In *Cutter* vs. *Doughty*, 7 *Hill.*, 305, overruling the Supreme Court (23 *Wend.*, 513), and the Chancellor (*In the matter of Hallett*, 8 *Paige*, 375; *Barnes* vs. *Greenzelach, et al., Ed. Ch. R.*, 41), the will itself defined "grandchildren" as including the children of a stepdaughter; and in *Crowen* vs. *Pinckney*, the will defined "nephews," to comprehend grand-nephews. But in the present instance, so far from there being any sign of an intention to enlarge the ordinary meaning of "daughters" and "children," the force of the language is in the opposite direction. Nor do I think the numerical designation of "eleven children," helps the interpretation desired, for the testator had eleven children in his lifetime, and though one was dead at the execution of the will, yet in view of the provision in case of the death of any of the children, in favor of "their children," there is no room for supposing the stepdaughter included as one of the eleven, to the exclusion of the deceased daughter, whose children were then living.

It is an established general proposition, that as to a devise or bequest to a designated individual, with a gift over in case of death, if the event happens in the testator's lifetime, a lapse does not necessarily ensue, but the ulterior gift takes effect on the testator's decease. (2 *Jarman*, 671.) The same principle has been extended in some instances to devises to a class, the objects of which could not be ascertained, till the decease of the testator. (*Ibid.*, 674.) But where the gift is to a class, with a substitution of the children of the legatees, who should happen to die before the distribution, and some individual of the class was dead when the will was made, it has in several cases been construed as a mere clause of substitution, and therefore as not comprehending the children of any who could not possibly have been the objects of the original gift. Such were the cases of *Christopherson* vs. *Naylor*, 1 *Meri.*, 320; *Butter* vs. *Ommaney*, 4 *Russ.*, 70; *Waugh* vs. *Waugh*, 2 *Myl. & Keen*, 41; *Peel* vs. *Catlow*, 9 *Smi.*, 372; *Gray* vs.

*Garman*, 2 *Hare*, 268.) But the Courts have leaned strongly against such a strict construction, whenever it would lead to the exclusion of the issue of a deceased child from participation in a general family provision. Thus, in *Giles* vs. *Giles*, 8 *Simon*, 360, where there was a gift of the residue in trust, for all the children of the testator living at the decease of his wife, " and if any such child or children should be deceased before his wife, and should leave issue, then the children of such, his son or daughter, should be entitled to the portion of such, his son or daughter, who might be deceased," with a proviso that the income of portions of " sons or *daughters*," who might die, might be applied to the maintenance of their issue; and the testator, at the date of his will, had four sons and one daughter, and had had another daughter who was then dead, leaving children; Sir L. Shadwell laid hold of the expression, " daughters," to sustain the position, that the children of the daughter dead at the date of the will were entitled. In *Jarvis* vs. *Pond*, 9 *Simon*, 549, the testatrix left the residue, after the decease of her daughter, among such of her sons and daughters as should be then living, and in case of the decease of any of them, " the surviving children of any of her sons or daughters, to have their father's or mother's part." At the date of the will, two of the testatrix's children were dead, leaving issue, and Sir L. Shadwell held, that the children of those dead at the date of the will, were entitled to participate in the residue. (See also *Tytherleigh* vs. *Harbin*, 6 *Simon*, 329 ; *Bebb* vs. *Beckwith*, 2 *Beavan*, 308 ; *Gaskell* vs. *Holmes*, 3 *Hare*, 438; 6 *Beavan*, 360 ; 2 *Keen*, 701.) It is not necessary, however, in the present matter to go this length. The bequest, here, is not to an open class, incapable of ascertainment till the testator's decease. It is not only to the testator's children, but to his " *eleven* children," a numerical description, pointing out the number of shares intended, and the persons designed to take ; and although one of the eleven was then dead, it is not a forced construction, inasmuch as the testa-

33

tor had but ten children then living, to interpret the word " *eleven*," as descriptive of the deceased daughter, for whose children, he immediately, in the same breath, makes provision by declaring, that in case of the death of any of his children, their portion shall be divided among their children. The proviso, " in case of death," is general, and does not by force of grammatical rule, apply necessarily to future death. There is nothing in the term to prevent my reading it as the Vice-Chancellor did in *Jarvis* vs. *Pond*, who said the words " in case of the decease," meant only as carried forward to the time of distribution, " in case any child or children shall be then alive, who are the issue of any of my children who are then dead." The idea of such a reading is this ; the testator did not contemplate only future deaths ; but in connection with a future period of distribution, an ascertainment at that time of those who might *then* be dead, and a consequent provision for their issue if any. By enumerating his children, I understand the testator to have contemplated a portion as well for the deceased child, as for those then living, and the violence which would ordinarily be done in assigning a share to a deceased child who could never take, is relieved by the clause giving the share allotted, as it were in remembrance of a deceased child, to her issue, who were then living.

I am of opinion, therefore, that the children of Dorothy Lawrence are entitled to one-eleventh of the residue.

As the will is a valid will of real estate, and the executors are directed to sell for the purpose of paying legacies (*Stagg* vs. *Jackson*, 1 *Comstock*, 206); the power should be executed, and the surplus of the proceeds of the sale, after paying the debts incurred for the support of the widow, should be distributed among the legatees.