NEW YORK COUNTY.— HON. D. G. ROLLINS, SURRO-
GATE.— June, 1885.

### ABBEY v. AYMAR.

*In the matter of the probate of the will of* WILLIAM
AYMAR, *deceased.*

In the construction of testamentary papers, language which, tested by strict grammatical rules, refers to the happening of events in the future may be held to include past occurrences of a similar character, including those transpiring before the execution.

Testator, by his will, directed that, upon the death of his sister, J., his estate should be divided into fourteen parts, one of which parts, it was provided, "is hereby given to and shall be vested in the children of my deceased niece, H., in equal shares. And in case either of the children of said H. *shall die* before my said sister, J., leaving lawful issue surviving, such issue shall take the share which would have been taken by such deceased child of H., if living." H. had left her surviving eight children; of whom seven survived the testator, and one had died before the execution of the will leaving a son, F., who survived the testator. Upon the application for probate of the will, a question having arisen as to the construction of the clause quoted, it was contended, on the part of the seven children of H., that the bequest in dispute was primarily given to a class in which no person other than themselves was included, and that F. could not take under the substitutionary clause, not having been a member of that class, at its creation; while it was

argued, in behalf of F., that the primary benefits of the bequest were extended to a class consisting of (1) such children of H. as survived J. and (2) the issue of others *at any time* dying, leaving issue surviving.—

*Held*, that F. took the share to which his parent would be entitled, if living.

Christopherson v. Naylor, 1 *Meriv.*, 320—dissented from; Lawrence v. Hebbard, 1 *Bradf.*, 252—compared.

UPON the application for probate of decedent's will, a question arose as to the interest thereunder of Frank R. Abbey, an infant grandson of Hannah Talmage, decedent's niece. The facts are stated in the opinion.

GEORGE C. BLANKE, *for proponent.*

B. A. SANDS, *special guardian of Louisa Aymar and others, infants.*

GEORGE G. DUTCHER, *special guardian for Frank R. Abbey.*

THE SURROGATE.—Upon the probate of this will, a question has arisen touching the true construction of the twelfth paragraph of its seventh article. That article directs that, upon the death of the testator's sister Judith, his estate shall be divided into fourteen parts, and distributed according to a scheme in such article specified. The paragraph that has given rise to the present contention is as follows: " One other fourteenth part of my said estate is hereby given to and shall be vested in the children of my deceased niece, Hannah Talmage, in equal shares. And in case either of the children of said Hannah Talmage shall die before my said sister Judith, leaving lawful issue surviving, such issue shall take the share which would have been taken by such deceased child of Hannah Talmage if living."

It appears that Hannah Talmage left her surviving

eight children. One of them, a daughter, died before the making of this will, leaving one child, an infant, who is now living. Is this infant entitled to the share in the estate that his mother would take were she still alive?

It is obvious that a testator, in selecting a class of persons—for example, the children of A.—as objects of his bounty, and providing for the issue of A.'s children deceased, may or may not wish to include the issue of such children of A. as have died before the date of the will. In directing that issue shall stand in place of their deceased parents, and take the share which their parents would have taken, if living, he may intend to limit this secondary gift, if I may so term it, to the issue of such "parents" only as shall die after the execution of his will and before his own death, or before some other indicated period of distribution; or he may wish, on the other hand, to include among his beneficiaries the issue of "parents" who are already dead. Which of the two is meant is sometimes plainly indicated by the testator himself. It is very far, however, from being plainly indicated in the case at bar. It has accordingly been necessary to make exhaustive examination of adjudged cases, in which language similar to that which has occasioned the present controversy has been judicially interpreted. The result of that examination will presently appear.

It is insisted, on behalf of the seven children of Hannah Talmage who were living at the date of testator's will, and all of whom are still alive, that the words—" in case *either* (that is *any*) of the children

shall die"—refer to the contingency of the death of such children as were alive at the date of the will, and of such children only, and that those words have, therefore, no application whatever to any child or children then dead. If the testator's language must be rigidly interpreted according to its grammatical construction, this proposition is obviously correct. "Shall die" literally imports death in the future, and it was not possible, in December, 1883, that the mother of this infant should thereafter die, seeing that she was already dead.

But in the construction of testamentary papers, it has often been the case that language, which by strict grammatical tests has referred to the happening of events in the future, has been held to include past events of a similar character. Thus, in Doe d. James v. Hallett (1 *Maule & Sel.*, 124), a son of J. S., born before the date of a testator's will, was held entitled to take an estate that such testator had devised to the sons of J. S., " to be begotten." The same doctrine is declared in Hewet v. Ireland (1 *P. Wms.*, 426). So in Wilkinson v. Adam (1 *Ves. & Bea.*, 422) a devise " to the children I may have by A., and living at my decease," was held to include the devisor's children by A., who were in existence at the date of his will.

In other reported cases, even more closely analogous to the case at bar than those above cited, the words "shall die," and kindred expressions occurring in testamentary papers, have been held to have the force of the words "shall be dead" or "shall have died"—the idea of futurity suggested by the word

" shall " being thus specially associated, not with the period of death but with the period of distribution, and with the fact of death *in the past*, as at that period *in the future* affecting the respective rights of persons interested as beneficiaries.

Among the adjudged cases wherein this liberal construction has been sanctioned, are : [*a*] Sheppard's Trust (1 *K. & J.*, 269); [*b*] Chapman's Will (32 *Beav.*, 382); [*c*] Parsons v. Gulliford (10 *Jur.*, *N. S.*, 231); [*d*] Loring v. Thomas (1 *Dr. & Sm.*, 497); [*e*] Hannam v. Sims (2 *De G. & J.*, 151); [*f*] Harris v. Harris (*L. R.*, 11 *Ch. Div.*, 663); [*g*] Jarvis v. Pond (9 *Sim.*, 549); [*h*] Adams v. Adams (*L. R.*, 14 *Eq.*, 246). The expressions construed in the foregoing decisions were respectively as follows, viz. : *a–* " Shall depart this life ; " *b, c* and *d–* " Shall die in my lifetime ; " *e–* " Shall happen to die ; " *f–* " Shall die ; " *g–* " In case of the decease of," etc., etc.; *h–* " Should any die." I am clear, therefore, that the infant claimant in the case at bar is not to be excluded from sharing in the benefits of the legacy here in question, merely because, in choosing his words for bequeathing it, the testator has said " shall die," instead of " shall be dead."

Even in Christopherson v. Naylor (*infra*) which, as will presently appear, is the leading case in support of the position that the issue of that child of Hannah Talmage who died before the date of this will can take nothing under it, the court said : " The question in this case does not depend upon the words ' shall happen to die in my lifetime.' Though according to strict construction those words import futurity,

they might have been understood as speaking of the event at whatever time it happened." I shall, accordingly, treat the provision that is here to be construed, as if it were thus expressed: "The issue of such children of said Hannah Talmage [(as shall have died before)" or "(as shall be dead at the death of) my said sister Judith] shall take," etc.

It is next claimed, in behalf of the surviving children of Hannah Talmage, that the bequest in dispute, even as its terms are above paraphrased, is primarily given to a class in which no other persons than themselves are included, and that the infant who claims the share of his deceased mother can take nothing under what they term the substitutionary clause, because, at the time the original class was created, his mother was not a member of it.

The counsel who makes this contention greatly relies upon the decision of Sir WILLIAM GRANT, in Christopherson v. Naylor (1 *Mer.*, 320). By the will there under review, a testator made a bequest " to each and every the child and children of my brother and sisters which shall be living at the time of my decease; but if any child or children of my said brother and sisters shall happen to die in my lifetime and leave any issue . . . . . living at his decease . . . . . then and in such case the legacies hereby intended for such child or children so dying . . . . . are given and bequeathed to his, her or their issue, such issue taking only the legacies which his, her or their parent or parents would have been entitled to, if living." It was held that, under the provision above quoted, the nephews and nieces of the testator were

primary legatees; that to the issue of nephews or nieces nothing whatever was given, except by way of substitution; that no person, therefore, could be treated as a substituted legatee, unless there was some original legatee in whose place he was entitled to stand; and that, as none of the testator's nephews and nieces could have taken under the will except those who were living at its date, the issue of those who were already dead could not take by substitution.

The theory of interpretation which is invoked in the case at bar, in behalf of Hannah Talmage's grandchild, is very fully and emphatically enunciated by Vice Chancellor KINDERSLEY, in Loring v. Thomas (1 *Dr. & Sm.*, 497).

The special guardian insists that the testator has not made an original bequest to Hannah Talmage's children as a class, and then supplemented it by a substitutional bequest to the issue of members of that class who should thereafter die, but that he has extended the primary benefits of his bequest to a more comprehensive class, which consists of such children of Hannah Talmage as shall be living at Judith's death, together with the issue of such others of her children as at any time theretofore shall have died leaving issue surviving, such issue to take a parent's share, etc.

While the question here presented has been frequently discussed in the judicial tribunals of England, almost from the beginning of the century, it seems to have been submitted in but a single instance for the determination of a New York court. A testator, whose will was construed in Lawrence v. Hebbard

(1 *Bradf.*, 252), had disposed of the residue of his estate in these words: "The remainder of my property is to be equally divided among my eleven children, and in case of the death of any of my children, their portion shall be divided among their children if they have any." A daughter of the testator had died before the execution of the will, leaving a son her surviving. Surrogate BRADFORD held that such son was entitled to the share that his mother would have received, had she lived to claim it. The decision, however, was in part founded upon the fact that, at the date of the testator's will, there were but ten of his children living, and that his direction that the residue should be divided into eleven parts was, therefore, a plain intimation of his purpose to extend the benefits of the disputed bequest to the issue of the deceased daughter.

Long v. Labor (8 *Penn. St.*, 229), May's Appeal (41 *Penn. St.*, 512), and Wheeler v. Allen (53 *Me.*, 232), are the only other American decisions that have fallen under my observation. They favor the broad rather than the narrow construction of such words as are here submitted for interpretation.

The English reports abound in cases very similar to the one at bar, many of them, indeed, almost identical with it. Some of those decisions strongly support, while others no less strongly discountenance, such a claim as is here urged by the special guardian. Very many of them turn upon the question whether the disputed gift is strictly substitutional in its character, or is, on the other hand, an original substantive gift to issue. The principle of the distinction is a

plain one, but its application has given rise to all sorts of subtleties and refinements of construction, and to decisions that are utterly irreconcilable. To review those decisions would be a profitless task. They are grouped below in the order of their dates.

The exclusion of the infant from the benefits of Mr. Aymar's will seems to be demanded by [1816] Christopherson v. Naylor (1 *Meriv.*, 320); [1827] Butter v. Ommany (4 *Russ.*, 70); [1833] Waugh v. Waugh (2 *Myl. & K.*, 41); [1838] Peel v. Catlow (9 *Sim.*, 372); [1843] Gray v. Garman (2 *Hare*, 268); [1852] Coulthurst v. Carter (15 *Beav.*, 421); [1853] Congreve v. Palmer (16 *Beav.*, 435); [1854] Thompson's Trust (5 *De G., M. & G.*, 280); [1859] Stewart v. Jones (3 *De G. & J.*, 532); [1859] Smith v. Pepper (27 *Beav.*, 86); [1869] Hotchkiss' Trust (*L. R.*, 8 *Eq.*, 643); [1871] Atkinson v. Atkinson (6 *Ir. Rep., Eq.*, 184); [1873] Hunter v. Cheshire (*L. R.*, 8 *Ch. App. Cas.*, 751); [1876] West v. Orr (*L. R.*, 8 *Ch. Div.*, 60); [1883] Widgen v. Mello (*L. R.*, 23 *Ch. D.*, 737).

On the other hand, the infant's claim as a beneficiary has the apparent sanction of [1835] Tytherleigh v. Harbin (6 *Sim.*, 329); [1837] Giles v. Giles (8 *id.*, 360); [1837] Rust v. Baker (*id.*, 443); [1839] Bebb v. Beckwith (2 *Beav.*, 308); [1839] Jarvis v. Pond (9 *Sim.*, 549); [1844] Gaskell v. Holmes (3 *Hare*, 438); [1856] Etches v. Etches (3 *Dr.*, 441); [1858] Hannam v. Sims (2 *De G. & J.*, 151); [1858] Faulding's trust (26 *Beav.*, 263); [1861] Loring v. Thomas (1 *Dr. & Sm.*, 497); [1863] Chapman's will (32 *Beav.*, 382); [1863] Jordan's Trust, (2 *New.*, 57); [1864]

Parsons v. Gulliford (10 *Jur.*, *N. S.*, 231); [1866] Attwood v. Alford (*L. R.*, 2 *Eq.*, 479); [1868] Gowling v. Thompson (19 *Law T. Rep.*, *N. S.*, 242); [1869] Philp's will (*L. R.*, 7 *Eq.*, 151); [1869] Potter's trust (*L. R.*, 8 *Eq.*, 52; [1870] Barnaby v. Tassell (*L. R.*, 11 *Eq.*, 363); [1872] Adams v. Adams (*L. R.*, 14 *Eq.*, 246); [1877] Sibley's trust (*L. R.*, 5 *Ch. Div.*, 494); [1877] Smith's trust (*id.*, 497, *note*); [1878] Wingfield v. Wingfield (*L. R.*, 9 *Ch. Div.*, 658); [1879] Harris v. Harris (*L. R.*, 11 *Ch. Div.*, 663); [1881] Lucas's will (*L. R.*, 17 *Ch. Div.*, 788).

I have extricated myself from this tangle of conflicting authorities in a state of mind such as Sir JAMES BACON, V. C., found himself to be in, when he pronounced his opinion in Barnaby v. Tassell (*supra*). He sustained the claim of the issue of a predeceased child, but declared that he did so " with the greatest hesitation and the least possible confidence in the soundness of the result." I shall follow his example.

Decreed accordingly.