[S. F. No. 7521. In Bank.—June 1, 1917.]

## In the Matter of the Estate of NANCY JANE EMART, Deceased.

WILL — EXECUTION — SUBSCRIPTION OR ACKNOWLEDGMENT — WITNESSES MUST BE PRESENT AT SAME TIME.—Section 1276 of the Civil Code, providing the manner in which wills must be executed and attested, and that "the subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority," requires the subscription or the acknowledgment by the testator to be before the two witnesses present at the same time.

APPEAL from a judgment of the Superior Court of Monterey County, refusing to revoke the probate of a will. J. A. Bardin, Judge.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellants.

Hudson, Martin & Jorgensen, for Respondents.

HENSHAW, J.—Contest after probate was instituted against the will of Nancy J. Emart, deceased. The court refused to revoke the probate of the will and this appeal followed. The facts stipulated were "that one of the attesting witnesses to said will attested said will in the forenoon of the day upon which the same was executed, and that the other attesting witness to said will attested the same upon the afternoon of said day, and that the said attesting witnesses did not sign their names or attest the said will in the presence of each other." Further, that "the two attesting witnesses signed their names as witnesses at the end of the will at testatrix' request and in her presence." Testatrix subscribed her will in the presence of one of the witnesses and acknowledged the subscription to the other attesting witness, declaring that the instrument was her will.

The single question presented is whether, under this evidence, there was a legal compliance with our law touching the acknowledgment and publication by the testatrix of her will. That law is found in section 1276 of the Civl Code, and is as

follows: "Every will . . . must be executed and attested as follows: 2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority."

The case is one of first impression and the question by no means free from doubt.  Properly to resolve it requires a brief consideration of this branch of the great statute of frauds. The fifth section of the statute of frauds (29 Car. II, c. 3) required that all devises and bequests of lands or tenements should be in writing and signed by the party so devising the same, and should be attested and subscribed in the presence of the devisor and of three or four credible witnesses.  The construction put upon this statute was that it did not in terms require that the attestation and subscription should be made at the same time and in the presence of the assembled witnesses, and such continued to be the rule of English decision until the statute itself was changed.  This construction, thus given at a very early day, was adhered to with great uniformity, though the judges frequently voiced their protests against the construction, as being unsound and as opening the door to the very frauds which the statute designed to prevent; it being said that in the requirement of acknowledgment before three or four witnesses it was manifestly designed that the acknowledgment should be of a *quasi*-public character, and that there was less likelihood that fraud could be perpetrated under such solemn circumstances, and more likelihood of an accurate memory, than under the rule which permitted each witness to state that the testator at varying times and under varying circumstances had acknowledged to him, and to him alone, that the instrument was his will.  In addition to this is the consideration that the execution of such a will is not fully complete until it is witnessed or attested. If the will is acknowledged to the one witness on one day and to the second witness months or even years thereafter, both witnesses will not be witnessing or attesting under the same state of facts, that is to say, neither witness could declare that at the time the other witnessed it the testator was apparently free from duress, menace, or undue influence and was of sound and disposing mind.

Thus in New York, where by virtue of its language the judges held their statute to be an enactment of the English law, with the interpretation which had been put upon it, the

learned Chancellor Walworth says in *Jauncey* v. *Thorne,* 2
Barb. Ch. 40, [45 Am. Dec. 424] : "It was also settled in
England, at a very early date, that a will of real estate at-
tested by three witnesses, who, at several times, subscribed
their names, in the presence of testator and at his request,
was valid, although all the witnesses were never present at
the same time. . . . It is at least doubtful whether the deci-
sions upon either of these questions were in conformity with
the intention of the framers of the provisions, in the statute
of Charles, relative to the execution of wills of real estate.
But they are in conformity with the letter of the statute,
which only required that the will should be signed by the
testator, but not that such signing should take place in the
presence of the attesting witnesses. Nor did the statute, in
terms, require the witnesses to attest the will, at the same
time, and in the presence of each other, but only that the
will should be attested by three witnesses who should sub-
scribe the same in the presence of the testator."

By force of these considerations the time came when the
English parliament believed this statute to require remodel-
ing, and it was remodeled in the Wills Act. (1 Vict. c. 26.)
That act prescribed "That no will shall be valid unless it
shall be in writing, and executed in manner hereinafter men-
tioned; (that is to say) it shall be signed at the foot or end
thereof by the testator, or by some other person in his pres-
ence, and by his direction; and such signature shall be made
or acknowledged by the testator in the presence of two or
more witnesses present at the same time; and such witnesses
shall attest and shall subscribe the will in the presence of
the testator, but no form of attestation shall be necessary."
This became the law of England in 1837, and with certain
modifications not necessary here to consider has continued to
be the expression of the English law. In 1860, in *Hoysradt*
v. *Kingman,* 22 N. Y. 372, the court of appeals of New York
was called upon to determine whether or not a will had been
duly executed under the provisions of the statutes of New
York under the circumstances here presented, that is to say,
the subscription and the publication or acknowledgment had
been made before the witnesses at different times. Great
pressure of argument was brought to bear upon the court,
seeking to have it adopt a construction in consonance with
the Wills Act, *supra.* The court of appeals said: "Our stat-

ute, passed a few years earlier, does not contain the language which so plainly settles the question in the English act; it declares, that every will shall be executed and attested in the following manner: '1. It shall be subscribed by the testator, at the end of the will; 2. Such subscription shall be made by the testator, in the presence of *each* of the attesting witnesses, or shall be acknowledged by him to have been so made to *each* of the attesting witnesses; 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament; 4. There shall be at least two attesting witnesses, *each* of whom shall sign his name as a witness, ·at the end of the will, at the request of the testator.' (2 Rev. Stats. 63, sec. 40.)'' (Some of these words have been placed in italics for convenient comparison with the language of our own statute.) The court held that the language of the New York statute was in manifest harmony with the decisions governing the same matter under the earlier statute of Charles. It is perhaps unnecessary to add that in most of the older states the statute of frauds of Charles II, was enacted as the state's own statute of frauds either in precise terms or in all material substance. Therefore the decisions of those states, sound in themselves, will throw but little light upon this consideration, where the conclusion must be reached by an interpretation of the peculiar language of our own statute. But to illustrate, the presence of the subscribing witnesses at the same time in the presence of the testator is not required in Tennessee under a law which simply declares ''The instrument must be subscribed by two witnesses, neither of whom are interested'' (*Simmons* v. *Leonard*, 91 Tenn. 183, [30 Am. St. Rep. 875, 18 S. W. 280]); nor in Connecticut, where the law requires that ''The will shall be in writing, subscribed by testator and attested by three witnesses, each of them subscribing in his presence'' (*Gaylor's Appeal*, 43 Conn. 82); nor in Indiana, where the law requires that ''The will shall be attested and subscribed in the presence of testator and two or more competent witnesses'' (*Johnson* v. *Johnson*, 106 Ind. 475, [55 Am. Rep. 762, 7 N. E. 201]); nor in Wisconsin, where the statute law is identical with that of Indiana (*Will of Smith*, 52 Wis. 543, [38 Am. Rep. 756, 8 N. W. 616, 9 N. W. 665]); nor in Illinois, where the law requires that the will be ''subscribed in his

[testator's] presence and at his request by at least two witnesses (*Flinn* v. *Owen*, 58 Ill. 111); nor in Georgia, where the requirement is that the will be "attested and subscribed in the presence of the testator by three or more competent witnesses" (*Webb* v. *Fleming*, 30 Ga. 808, [76 Am. Dec. 675]). We need not multiply these instances. Enough have been given to show, as has been said, that they can afford us little of value in the present difficulty, and illustrate merely that the legislatures of these states and their courts, in following the statutes, have in substance adopted the language of the statute of frauds of Charles II, and the interpretation which the English courts put upon that statute. In this connection, perhaps, it is proper to refer to one additional case, that of *Green* v. *Crain*, decided in Virginia in 1855 (12 Gratt. 252). The language of the Virginia statute taken from the Victorian Wills Act required a signing by the testator and that "the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses present at the same time." The facts were that the testator signed and acknowledged the instrument in the presence of one of the attesting witnesses and subsequently acknowledged the instrument in the presence of the other attesting witness, the first attesting witness being also present. The case in its facts differs from the present case in that there both the witnesses were present at the time the acknowledgment was made to the second witness; while here the two witnesses were never at the same time in the presence of the testator for the purpose of receiving his acknowledgment. The court of Virginia reasoned that the requirement "that the relation of 'presence' shall exist between the testator and the witnesses does not require that the relation of 'presence' should exist between the witnesses themselves." And the court repudiates the decisions of the English courts holding the contrary construction of the Wills Acts of Victoria. Of this case it need only be said that its reasoning is far from convincing. In conclusion upon this general discussion it will suffice to point out that the legislatures of some, even of the older states, have in their wisdom adopted the requirements of the Victorian Wills Act (*Ludlow* v. *Ludlow*, 36 N. J. Eq. 597; *Roberts* v. *Welch*, 46 Vt. 164; *In re Claflin's Will*, 75 Vt. 19, [58 L. R. A. 261, 52 Atl. 1053]); while in Connecticut its legislature enacted in 1875 a statute of wills

in all essentials like the Victorian Act, and subsequently, in 1885, modified its law to read as above quoted. (*Lane's Appeal*, 57 Conn. 182, [14 Am. St. Rep. 94, 4 L. R. A. 45, 17 Atl. 926].)

With this brief review we may come to the history of our own wills law. It first appears upon the books in the statutes of 1850, page 177. It is there declared (section 3): "That no will . . . shall be valid unless it be in writing and signed by the testator . . . and attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator." Manifestly this language from the statute of 1850 is susceptible of and would be given the construction placed upon the statute of frauds of Charles II. In 1870 commissioners were appointed by authority of law to draft a complete system of codes for this state. The work of the original commission, before the codes were adopted, was subjected to revision and review by two other code-commissions, and as a result of their labors this significant fact appears: The first code commissioners submitted as their statute of frauds touching the execution of wills a section which they numbered Civil Code, section 1276, and which section was in the identical language of the New York provision above quoted. More than that, the learned commissioners themselves recognized and expressed their indebtedness to the proposed New York code, upon which they made heavy drafts. Those codifiers announced that section 1276 had been taken from section 550 of the proposed New York Civil Code. But our Civil Code first prepared by Commissioners Charles Lindley, John C. Burch, and Creed Haymond was not adopted, as has been said, until it had been repeatedly revised by other men learned in the law, and amongst these men two who sat upon this bench—Honorable Stephen J. Field and Honorable Jackson Temple. Section 1276 of the Civil Code, as enacted in its present form, is the result of their review and their modification of the proposed section 1276. The proposed section 1276 was substantially a re-enactment of the statute of frauds of Charles II. If the code revisionists had desired that the statute of frauds of Charles II should be declared to be our law, no doubt can be entertained but that they would have accepted section 1276 as originally proposed by the first commissioners. At this time (1871 to 1874) the Wills Act of Victoria was and for years had been

in existence. These learned jurists well knew it, and it is not easy to avoid the conclusion that when they refused to accept section 1276 in its proposed form, and modified it to its present form, they did so in the belief that the Victorian Act was the wiser statute, and therefore the one which this state should adopt. The legislature, concurring in their views, enacted the law in its present form. We have much internal evidence in the language of the statute itself that this view is correct. To illustrate: The phraseology of subdivision 1 of section 1276, to the effect that the will "must be subscribed at the end thereof by the testator himself" is language taken bodily from the Victorian Act, and not found in the statute of Charles II.

From the language of our statute and this review of its history, we regard the conclusion as unescapable that our law requires the subscription or the acknowledgment to be before the two witnesses present at the same time. And while, as has been said, there is no direct adjudication in this state upon the question, every utterance of this court is in confirmation of this view. Thus in *Estate of Toomes*, 54 Cal. 509, [35 Am. Rep. 83], objection was made to the will that it was not duly executed under the provisions of section 1276 of the Civil Code, upon the ground, amongst others, that the subscription was not made in the presence of the attesting witnesses. This court, reviewing the evidence, declared: "Here we have the fact that the testatrix made her mark to the instrument, the declaration that it was her will and testament, made in the presence and hearing of the witnesses, and the fact that the witnesses subscribed the same at her request, in her presence, and in the presence of each other. We think this was sufficient." In *Estate of Cartery*, 56 Cal. 470, amongst the interrogatories submitted to the jury was one "Whether the subscribing witnesses signed the proposed will in the presence of the deceased and of each other and at his request." The jury's answer being in the affirmative, the trial court upheld the execution of the will as in accordance with law, and this court declared that this and like interrogatories covered all the issues raised by the contestant. In Montana, whose statute is identical with ours, it is declared, quoting from the syllabus of *In re Noyes Estate*, 40 Mont. 178, [105 Pac. 1013]: "The statutory formalities of execution, such as the place of the testator's signature, or

the fact that he signed or made acknowledgment in the presence of witnesses, or made publication, or that the witnesses properly signed in his presence and in the presence of each other and at his request, stand as of equal importance and must be observed."

The answer to respondent's argument that courts should give a liberal construction to the statutory requirements for the due execution of a will is found in *Estate of Walker*, 110 Cal. 387, 390, [52 Am. St. Rep. 104, 30 L. R. A. 460, 42 Pac. 815], and in *In re Seaman's Estate*, 146 Cal. 455, [106 Am. St. Rep. 53, 2 Ann. Cas. 726, 80 Pac. 700], and it is sufficient to rest the response upon the discussion of the matter found in those cases.

For the foregoing reasons the judgment refusing to revoke probate of the will is reversed.

Shaw, J., Lorigan, J., and Melvin, J., concurred.

SLOSS, J., Dissenting.—I dissent.

When the legislature of this state enacted section 1276 of the Civil Code, it was not entering upon a new field of legislation. Statutes governing the making and attestation of wills had long existed in England and America, and these statutes had frequently been before the courts for interpretation. The enactments of the American states are based upon one or the other or both of the English acts referred to in the majority opinion, with such modifications as were deemed proper in the respective jurisdictions. As is stated in that opinion, it was the settled construction, under the statute of frauds (29 Car. II, c. 3, s. 5), that the witnesses were not required to be present together at the signing or acknowledgment by the testator, or to attest in the presence of each other. (*Jauncey* v. *Thorne*, 2 Barb. Ch. (N. Y.) 40, [45 Am. Dec. 424] ; *Sullivan* v. *Sullivan*, L. R. 3 Ir. 299; *Westbeech* v. *Kennedy*, 1 Ves. & B. 362; *Ellis* v. *Smith*, 1 Ves. Jr. 11.) With the law thus established, there was enacted, in 1837, the Wills Act (1 Vict., c. 26), which provides "that no will shall be valid unless it shall be in writing, and executed in manner hereinafter mentioned; (that is to say) it shall be signed at the foot or end thereof by the testator, or by some other person in his presence, and by his direction; and such signature shall be made or acknowledged by the testator in the presence of two or more

witnesses present at the same time; and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary.'' The words ''present at the same time'' left no room for doubt that the witnesses must be jointly present when the testator makes or acknowledges his signature. One of the obvious purposes of the later statute was to change the old law, which, as I have just said, permitted the testator to acknowledge his signature to the different witnesses at different times. But the concluding clause, relating to the attestation by the witnesses, does not contain the words ''at the same time.'' It merely prescribes that the witnesses shall attest and subscribe in the presence of the testator. Accordingly, even under the Wills Act, the requirement of joint presence of the witnesses was not carried beyond the time of the testator's signing or acknowledging. The prevailing opinion of English courts and text-writers has been that it is not necessary that the witnesses should attest and sign at the same time, or that both should be present during the attestation. The will having been signed or acknowledged in the presence of both, each might attest and sign in the absence of the other. The contrary view, expressed *obiter* by Lord Brougham in *Casement* v. *Fulton* (5 Moore P. C. 130), has not been followed. There have been several decisions that the witnesses need not sign in the presence of each other (*Faulds* v. *Jackson*, 6 Notes of Cas. Sup. 1; *Webb's Case*, 1 Deane, 1; *Cooper* v. *Bockett*, 3 Curt. 648; *Sullivan* v. *Sullivan*, L. R. 3 Ir. 299), and the same construction of the statute has been approved by eminent law writers (1 Wms. Exrs. 93; 6 Sug. Real Prop. St. 342; 1 Jar. Wills, *85). The Virginia court, in giving the same effect to a statute like the Wills Act (*Green* v. *Crain*, 12 Gratt. (Va.) 252), did not, as the majority opinion says, ''repudiate the decisions of the English courts holding the contrary construction.'' To the contrary, it was in accord with the English courts.

It appears, therefore, that under both English statutes the provision that an act shall be done by two or more witnesses in the presence of the testator does not require that the witnesses do the act at the same time, or in the presence of each other. It is enough if each does the act and if the testator be present on each occasion. The same construction should, on like grounds, apply to a provision, like that of section 1276

of the Civil Code, that the testator perform some act, or make some declaration, "in the presence of" or "to" a given number of witnesses. The necessity for the joint presence of the witnesses during any part of the testamentary act exists only when the statute contains direct and explicit language to that effect, as the Wills Act does when it declares that the signature shall be made or acknowledged by the testator in the presence of two or more witnesses *present at the same time*.

The American statutes governing the making of wills have uniformly been interpreted in accordance with these views. The legislation in the several states has varied greatly, some of the statutes being modeled on the statute of frauds, others following the Wills Act, while some (like our own) embody certain features of each of the English acts, or make additional provisions, like that of declaration that the paper is a will. Where the statute simply provides that a will must be in writing and attested by two or more witnesses, subscribing their names thereto in the presence of the testator, or that the will shall be signed or acknowledged in the presence of two witnesses, who shall subscribe the will in the presence of the testator, it has everywhere been held that the witnesses need not be together during the act of signing or acknowledgment on the part of the testator, or during their own attestation. (*Moore* v. *Spier*, 80 Ala. 129; *Gaylor's Appeal*, 43 Conn. 82; *In re Porter*, 20 D. C. (9 Mackey) 493; *Webb* v. *Fleming*, 30 Ga. 808, [76 Am. Dec. 675] ; *Flinn* v. *Owen*, 58 Ill. 111; *Hull* v. *Hull*, 117 Iowa, 738, [89 N. W. 979] ; *Grubbs* v. *Marshall* (Ky.), 13 S. W. 447; *Chase* v. *Kittredge*, 11 Allen, (Mass.), 49, [87 Am. Dec. 687] ; *Cravens* v. *Faulconer*, 28 Mo. 19; *Welch* v. *Adams*, 63 N. H. 344, [56 Am. Rep. 521, 1 Atl. 1] ; *In re Clark's Will* (N. J.), 52 Atl. 222; *Watson* v. *Hinson*, 162 N. C. 72, [Ann. Cas. 1915A, 870, 77 S. E. 1089] ; *Simmons* v. *Leonard*, 91 Tenn. 183, [30 Am. St. Rep. 875, 18 S. W. 280] ; *Barker* v. *Hinton*, 62 W. Va. 639, [13 Ann. Cas. 1150, 59 S. E. 614] ; *In re Smith's Will*, 52 Wis. 543, [38 Am. Rep. 756, 8 N. W. 616, 9 N. W. 665].) Two states have or had statutes substantially identical with our own, so far as the question under consideration is concerned, with the single exception that subdivision 2 provides for signature or acknowledgment in the presence of or to "each of" the attesting witnesses. In both of these states it has been held that the witnesses are not required to be present at the

same time. (*Rogers* v. *Diamond,* 13 Ark. 474; *Hoysradt* v. *Kingman,* 22 N. Y. 372, 379.) The prevailing opinion takes the position that our code section is to be given a meaning different from that of the New York statute, for the reason that the provision in force in California does not embody the word ''each.'' I think this argument gives entirely too much weight to what the New York court of appeals itself, in *Hoysradt* v. *Kingman,* terms a ''verbal criticism.'' That court based its conclusion upon the fact that the legislature, with the former statutes, and the judgments of the courts upon them, before it, drew an act which omitted the significant words of the Wills Act, ''present at the same time,'' thereby plainly indicating that it did not intend to adopt that requirement of the Wills Act. Our own statute also omits these words, and contains nothing of equivalent import. Nevertheless, the majority of this court reaches what seems to me the strange conclusion that our legislature, with the earlier legislation on the subject before it, designed to adopt the rule of the Wills Act. If that was the purpose, it is difficult to see why the clear and unambiguous language of the Wills Act, requiring presence ''at the same time,'' was not copied into our law.

No case is cited, and I have found none, holding that the witnesses must be present together, except where the statute explicitly calls for such unity, as in Connecticut, where it was provided that the will must be attested by three witnesses, ''all of them subscribing in his presence and in the presence of each other'' (*Lane's Appeal,* 57 Conn. 182, [14 Am. St. Rep. 94, 4 L. R. A. 45, 17 Atl. 926]), or in Vermont, where the statute demanded attestation and subscription by ''three or more credible witnesses in the presence of the testator, and of each other'' (*Adams* v. *Field,* 21 Vt. 256), or in Virginia, under a statute containing the words ''two competent witnesses present at the same time.'' (*Green* v. *Crain,* 12 Gratt. (Va.) 252.)

When the legislature of this state enacted section 1276 of the Civil Code, it had before it the history of the earlier English and American legislation, and the decisions interpreting that legislation. It adopted some of the provisions of the Wills Act not found in the statute of frauds. For example, it provided for the signing by the testator at the end of the will, and for a signing or acknowledgment in the presence of witnesses. But it omitted the clear and definite words of the

Wills Act, "present at the same time," which alone import into that statute the requirement for a joint presence of the attesting witnesses. As was said by the court of appeals of New York, the inference is irresistible that if it had been intended to change the settled rule that the witnesses need not be present together at any part of the testamentary act, the change would have been made by incorporating the words which were used to accomplish such change in the legislation of England, or other words of like import. (*Hoysradt* v. *Kingman,* 22 N. Y. 372, 379.) The omission of any express requirement to this effect is convincing evidence that on this point the legislature intended to adopt the rule of the statute of frauds, rather than that of the Wills Act.

Subdivision 2 of section 1276 provides that the subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him, or by his authority. It was so acknowledged in this case. The testatrix acknowledged to the two witnesses that the subscription to the will had been made by her. Subdivision 3 declares that the testator must at the time of subscription or acknowledgment declare to the attesting witnesses that the instrument is his will. Mrs. Emart did so declare to both of the subscribing witnesses. There is no more reason for reading into the provisions (subdivisions 2 and 3), referring to the subscription or acknowledgment, and to the declaration to the witnesses, a requirement that both witnesses must be present at the same time, than there was for reading such requirement into the provision of the Wills Act that the witnesses must sign in the presence of the testator.

The question before us is not one of policy; it is one of interpretation merely. There is no inherent or natural right to pass property by will. The privilege is conferred by statute, and the extent and the mode of its exercise are determined by the legislative provision. The courts have not the right to overlook the failure to comply with a single requirement of the statute, whatever their view of its wisdom or necessity. (*Estate of Walker,* 110 Cal. 387, [52 Am. St. Rep. 104, 30 L. R. A. 460, 42 Pac. 815].) But neither are they justified in reading into the law a demand for the performance of any act or formality not included within its terms. I think just that has been done in this case.

Angellotti, C. J., concurred.