455 P.2d 310

Eunice PARKISON, Plaintiff, Contestant and Appellant,

v.

Beulah ARTLEY, Defendant, Proponent and Respondent.

No. 10051.

Supreme Court of Idaho.

June 5, 1969.

William B. Taylor, Jr., Grangeville, for appellant.

William J. Dee, Grangeville, for proponent.

SPEAR, Justice.

The issue in this case has been succinctly stated by the respondent as follows:

> "The sole and single issue in this matter is whether or not the document purporting to be the last will and testament of Clinton Reeves was properly executed in conformance with and in compliance with the laws of the State of Idaho."

The decedent, Clinton Reeves, at the time of his death was a resident of Riggins, Idaho County, Idaho. The respondent, Beulah Artley, had been a housekeeper for Clinton Reeves for several years. The contestant, appellant herein, was Reeves' sister and closest relative, Eunice Parkison.

Reeves had for years suffered from emphysema. On August 6, 1965 he suffered a severe attack, and was taken to a hospital at McCall, Idaho. While in the hospital he was frequently visited by William E. Walker and Ursie D. Walker, husband and wife. Both of the Walkers were nurses and old friends of the decedent. On the afternoon of August 8, 1965, while visiting with the decedent, Mrs. Walker mentioned that she understood Reeves had earlier expressed a wish to make some disposition of his property. The decedent responded by expressing a wish that Mrs. Walker's husband were present, stating that if Mr Walker were present, maybe he, the decedent, could do something about that yet. Mrs. Walker then said, "If you want to tell me what you want, I'll write it down myself." After some thought, Reeves responded to the suggestion by dictating the body of the document in question to Mrs. Walker.

After the body of the document was completed, the decedent borrowed Mrs. Walker's glasses and proceeded to read it. After he had read it, he signed it. At that point, Mrs. Kleint, the nurse who was sitting at her station across the hall, was called in. Mrs. Kleint did not remember the substance of the conversation that took place in the room, but she did testify that she knew she was signing a will and that she had read it. Mrs. Kleint further testified that from her position at the nurses' station, not more than 10 feet directly across from the open door of the decedent's room, she had overheard Mrs. Walker and decedent discussing the will. Mrs. Walker testified that the decedent said to Mrs. Kleint, "Will you put signature over there?" pointing to the bottom of the left-hand corner of the will. Mrs. Kleint then wrote the word "witness" and signed just below that. Mrs. Walker signed below Mrs. Kleint's signature.

At the conclusion of the proceedings in the district court, the trial court made the following findings of fact, among others:

"* * * Ursie Walker then called Gretal M. Kleint, the nurse on duty, whose station was in front of the open door of Clinton Reeves' room and Clinton Reeves pointed to the will, signed it, and asked Mrs. Kleint to sign the same; Gretal M. Kleint wrote the word 'witness' and signed beneath it, and then Ursie Walker then signed below Gretal M. Kleint; said Clinton Reeves and the two witnesses were in the presence of each other at all material times." * * *

"* * * that the purported will of August 8, 1965, was executed by Clinton Reeves and attested to by the subscribing witnesses in accordance with the applicable provisions of Idaho law."

"* * * That the purported will was the product of the wishes and desires of Clinton Reeves; that the purported will of August 8, 1965, was not a legally defective and deficient attempt to make a testamentary disposition of the property * * *"

By her first four assignments of error, appellant has alleged that the foregoing "findings of fact" are not supported by the evidence. Essentially, however, these assignments of error and the four remaining ones do no more than raise the issue of whether the document in question was properly executed, attested and published so as to accord it the status of a will under Idaho law. Therefore, I.C. § 14–303[1] is drawn in question.

■ At the outset, it does appear that the trial court erred in concluding that "Clinton Reeves pointed to the will, signed it, and asked Mrs. Kleint to sign the same." The testimony in this case unequivocally shows that after Reeves dictated and read the will, he signed it and *then* asked Mrs. Walker to call Mrs. Kleint into the room. Mrs. Kleint, when she arrived, wrote the word "witness" to the left of Clinton Reeves' signature and then signed it. Mrs. Walker signed immediately below Mrs. Kleint. However, an erroneous finding of fact is not grounds for reversal unless such error is prejudicial. Were we to reverse and remand this case without deciding the issues argued on appeal, we would simply have to face the same issues again at a later date—after a considerable waste of time and effort by all concerned. Therefore,

1. "14–303. Execution of will.—Every will, other than a nuncupative will, must be in writing, and every will, other than olographic will and a nuncupative will, must be executed and attested as follows:
1. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto;
2. The subscription must be made in the presence of the attesting witnesses or be acknowledged by the testator to them, to have been made by him or by his authority;
3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and
4. There must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request, and in his presence."

we shall decide this case on the basis of the issues raised and argued by the parties on appeal.

■ Under our statute, it is not required that the will be signed in the presence of the attesting witnesses. However, if the document is not signed before the witnesses, the testator must *acknowledge* the signature as his or as having been made by his authority. Appellant has no quarrel with this proposition, but she does contend that both witnesses must be present and able to attest to either a subscription or an acknowledgment. In other words, it is appellant's position in this case that Mrs. Walker witnessed the decedent's signing of the document in question, but since he signed it before Mrs. Kleint came into the room, Mrs. Kleint could, at best, only attest to the testator's acknowledgment.

In order to sustain her position, the appellant relies on the case of In re Emart's Estate, 175 Cal. 238, 165 P. 707, L.R.A. 1917F, 866 (1917). In *Emart* the California Supreme Court struck down a will where one witness signed the document in the morning and another witness signed it in the afternoon, thus obviously raising the situation of one witness attesting to a subscription and the other witness attesting to an acknowledgment. However, we do not find it necessary to pass on the merits of *Emart*. Here, while Mrs. Walker was indeed the only one to witness the decedent's subscription, she also witnessed his acknowledgment. Mrs. Walker did not sign the document in question until *after* Mrs. Kleint had signed. Therefore Mrs. Walker witnessed both the subscription and the acknowledgment.

■ The next question then, is whether what transpired in Clinton Reeves' hospital room, after Mrs. Kleint arrived, was a sufficient acknowledgment. The general and better reasoned rule appears to be:

"The testator may acknowledge his signature by his acts and gestures, without making any express acknowledgment of the signature in words. If, without referring to such instrument as his will, the testator produces it with his signature visible and requests witness [sic] to sign it, this is a sufficient acknowledgment." 2 Bowe-Parker: Page on Wills § 19.115 (1960). See also 57 Am.Jur., Wills, § 298 (1948) and 7 A.L.R.3d 317, 353 (1966).

When, as here, a testator produces a document constituting a testamentary disposition of his property, with what purports to be his signature clearly visible thereon and asks that it be signed or witnessed by persons present, there has been sufficient acknowledgment of his signature in the absence of any question of fraud or undue influence.

■ We are also convinced, in view of all the circumstances, that there was a sufficient publication of his will by the testator. In the case of Estate of Gordon, 48 Idaho 171, at page 174, 279 P. 625, at page 626 (1929), this court said:

"The statute requires that, at the time of subscribing or acknowledging the same, the testator must declare to the attesting witnesses that the instrument is his will. While this requirement must be complied with, no particular formula of·words or actions, is prescribed to constitute the required declaration. It may be done, of course, by word of mouth, but an examination of the numerous decisions is convincing that it may also be inferred from the acts and conduct of the testator. [citations]"

This case presents the situation of a testator who could speak only with the greatest of effort since he was dying from emphysema. Mrs. Kleint knew she was witnessing a will—she had overheard Mrs. Walker and Reeves discussing it. Mrs. Walker obviously knew she was witnessing a will—she wrote it down. No question is raised that Reeves did not intend to make a testamentary disposition. Therefore, we can conceive of no situation better suited for application of the equitable rule laid down by this ·court forty years

ago. We conclude that under the circumstances of this case, a declaration by the testator that this was his last will and testament may be "inferred from the acts and conduct of the testator."

Judgment affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, DONALDSON and SHEPARD, JJ., concur.