IN RE BRAGG'S ESTATE. WEAVER ET AL., RESPONDENTS,
v. DAEMS ET AL., APPELLANTS.

(No. 7,741.)

(Submitted December 16, 1937. Decided January 24, 1938.)

[76 Pac. (2d) 57.]

134

Mr. *Seth Bohart* and Mr. *Roy M. Keister,* for Appellants, and Mr. *Walter S. Hartman* of Counsel, submitted an original and a reply brief; Mr. *Hartman* argued the cause orally.

Mr. *Edmund Burke, Jr.,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an appeal from an order denying a petition for the probate of a will.

On March 4, 1937, L. R. Daems, named executor therein, filed his petition in the district court of Gallatin county, Montana, praying that the last will and testament of Sallie Marston Bragg be admitted to probate. The will was filed with the clerk of the court on the same date. Following timely notice, hearing was had on the petition on March 15, and the testimony, in affidavit form, of the two attesting witnesses was filed with the clerk. Thereupon Edmund Burke, Jr., as attorney for a brother and one of two sisters of the testatrix, alleged to be the only heirs at law, filed his written opposition to the probate of the will. The contestants will hereafter be referred to as the plaintiffs, and the proponent as the defendant.

Plaintiffs' grounds of attack are set forth in paragraph V of the objections, and are in substance as follows: That the deceased did not sign the alleged will in the presence of the attesting witnesses, or either of them; did not acknowledge to the attesting witnesses that the signature to the instrument was made by her or by her authority; that the attesting witnesses, nor either of them, did not testify that the signature of the testatrix was on the alleged will at the time of the attestation of such witnesses; and that the attesting witnesses did not sign the instrument in the presence of each other. All of the foregoing allegations were put in issue by the answer. All of the pleadings of both parties, subsequent to the filing of the petition for probate, were filed on the date of the hearing above mentioned.

On the completion of the examination of the witnesses, briefs were submitted and the matter was taken under advisement by the court. April 9, 1937, the plaintiffs filed their motion to strike from the files the written testimony, in affidavit form, of the attesting witnesses on the ground that ''said instrument purporting to be the testimony of the subscribing witnesses on probate of will, shows on its face to be the ultimate conclusions and not the testimony required to be reduced to writing under section 10036, R. C. M. 1935.'' The hearing on the motion was had on April 12, at which time defendant filed written opposition thereto. May 5 the court sustained the motion to strike, not on the ground upon which the motion was submitted, but ''for the reason that said written testimony is not the testimony given by said witnesses in open court.'' The court further incorporated in its order allowing the motion to strike, directions that the testimony of the attesting witnesses, given in open court, be transcribed by the court reporter and filed as the testimony of the witnesses therein. On the same date the court made the order denying admission of the will to probate from which this appeal was taken.

A number of assignments of error were specified by the defendant, but after careful analysis of the circumstances attending the execution of the will, the evidence, and an extended re-

view of the authorities, our conclusion is that, aside from some preliminary questions which will be determined before going to the merits of the controversy, the solution of two questions will be determinative of the action: (1) May the signature to a will be acknowledged by the testator to the attesting witnesses by any other means than by spoken words? (2) If one of the attesting witnesses provided for by the statute did not see, nor might have seen the signature of the testator on the will when the witness signed as an attesting witness, may the will be denied probate for that reason?

The first preliminary question is on the burden of proof. Each party contends the burden is on the other. In *Farleigh* v. *Kelley*, 28 Mont. 421, 72 Pac. 756, 758, 63 L. R. A. 319, a will contest case, it was said: "The contestants are the plaintiffs. They have the burden of proof imposed upon them, and with that they have the right to open and close. [Citing cases.] 'The same procedure is made applicable to a contest after the will has been admitted to probate as before. In both, the contestant has the laboring oar, as though he is attacking something which he must overcome by affirmative proof. Under such circumstances, I think the theory of the statute must be that the contest begins after the petitioner has made his prima facie case.' "

The rule suggested in the *Farleigh Case,* as to the necessity of the proponent of the will establishing a prima facie case, was adopted in *In re Colbert's Estate,* 31 Mont. 461, 78 Pac. 971, 972, 80 Pac. 248, 107 Am. St. Rep. 439, 3 Ann. Cas. 952, where it was said: "In every will case under our statute the rule of procedure is that the proponent of the will must first make out a prima facie case."

It was said in *In re Silver's Estate,* 98 Mont. 141, 38 Pac. (2d) 277, that the contestant of a will, both before and after probate, assumes the position of a plaintiff and has the burden of proof.

In a leading California case, *In re Estate of Latour,* 140 Cal. 414, 73 Pac. 1070, 1072, 74 Pac. 441, it was said: "The court should determine upon evidence introduced before it, *without*

*the presence of the contestant,* as to the existence of all facts essential to the probate of the will," but held that on the issues raised by the contestant the burden was on him. This ruling was referred to in the later case of *In re Estate of Cullberg,* 169 Cal. 365, 146 Pac. 888, 889, and in ruling upon an objection to the contestant's cross-examining the attesting witnesses called by the proponent, the following comment was made: "The contestants were not, strictly speaking, parties to this preliminary inquiry; but we cannot see that the court violated any substantial right of the proponent by permitting the contestants to cross-examine the witnesses regarding the details of the alleged execution."

After reviewing the rules of the various jurisdictions pertinent to the question, Jones on Evidence, in volume 2, second edition, page 988, says: "The usual practice is for the proponent to produce the subscribing witnesses, make formal proof of compliance with the statutory formalities, and give some proof of testamentary capacity. * * * This practice, modified in minor instances, is now becoming universal. The proceeding on a petition for probate is distinct from the proceeding on a contest of a will."

We think the burden was on the proponent, the defendant here, to make his prima facie case, and on all issues raised by the contestants the burden was upon them. This appears to be the general rule. It is obvious that the proponent must satisfy the court by a preliminary showing, as no occasion arises for a hearing on a contest until that is done. We think a prima facie case is established when the provisions of section 10030, Revised Codes, are complied with, namely, by the testimony of one or both of the attesting witnesses as to their signatures to the will and the signature of the testator. If the witnesses be · not available for any reason, then by proof of genuineness of the signatures in the manner specified in section 10030.

We find good authority in the books to the effect that a contestant has no part in this preliminary or prima facie proof of the right to probate. Some authorities have been mentioned heretofore. Bancroft on Probate Practice, volume 1, page 367,

has this to say on the subject: "The hearing on application for probate and the hearing on opposition or contest are none the less wholly distinct because occurring on the same day." This mode appears logical and in harmony with section 10030, but we are unable to see how the proponent of a will is injured by the court permitting counsel for contestant to take part in the preliminary proceeding to the extent of cross-examining the proponent's witnesses. It would, in effect, be an aid to the court.

By reason of the many decisions found in the books and the conflicting views therein expressed touching certain phases of the questions involved here, we have found it difficult to arrive at a satisfactory solution of this controversy. The matter was ably argued, both orally and in the briefs, by counsel for both parties, and our search for precedents and authorities was materially lessened thereby, but further search and much reading were necessary clearly to differentiate between decisions which appeared irreconcilable on first blush; many clearly conflict, and in such instances it became necessary to accept the views given that appeared to us to be supported by the better reasoning, and reject the others.

It must be kept in mind that while section 6980, Revised Codes, prescribes the rules that govern the making and execution of a will, the proof as to whether the testator has substantially complied with such rules must be made in accordance with the rules of evidence, that while two attesting witnesses are indispensable to the making of a valid will, in form such as we have under consideration, yet the satisfactory testimony of one witness entitles a will to probate, (sec. 10505, Id.), that while many decisions from various jurisdictions hold, in substance, that the testator signing a will out of the presence of the attesting witnesses must orally acknowledge the signature to be his at the time the will is attested by the witnesses, yet our statute provides that facts may be established by indirect or circumstantial evidence, section 10497, and, in civil actions, this court has held the issues may rest entirely upon such evidence. (*Exchange State Bank* v. *Occident Elevator Co.*, 95 Mont. 78, 24 Pac. (2d) 126, 90 A. L. R. 740; *Moffett* v.

*Bozeman Canning Co.*, 95 Mont. 347, 26 Pac. (2d) 973.) These rules, fixed by our statutes and decisions, are clearly in conflict with some decisions of other jurisdictions in similar actions.

We proceed with the consideration of this appeal guided by established rules, other than the above, as follows: In reviewing a decision of the district court it will be presumed that its findings and judgment are correct (*In re Myer's Estate*, 92 Mont. 474, 15 Pac. (2d) 846; *Mulholland* v. *Butte & Superior Min. Co.*, 87 Mont. 561, 289 Pac. 574), and that the burden is on the party alleging error to show the error affirmatively (*Cashin* v. *Northern Pac. R. Co.*, 96 Mont. 92, 28 Pac. (2d) 862; *Downs* v. *Nihill*, 87 Mont. 145, 286 Pac. 410; *Gravelin* v. *Porier*, 77 Mont. 260, 250 Pac. 823; *O'Hanlon* v. *Ruby Gulch Min. Co.*, 64 Mont. 318, 209 Pac. 1062), but that an action to probate a will is a special statutory proceeding, equitable in nature (68 C. J. sec. 596, p. 873) and, in a review on appeal, is governed by the rules that apply in an equitable action; that the presumption is against intestacy (28 R. C. L. 189), and it is the policy of courts to sustain a will, if it is possible to do so (*In re Maginn's Estate*, 278 Pa. 89, 122 Atl. 264, 30 A. L. R. 418); and every reasonable presumption will be indulged in favor of the due execution of a will (*Martin* v. *Martin*, 334 Ill. 115, 165 N. E. 644, 67 A. L. R. 1127); that statutory requirements must be clearly and fully observed (*In re Silver's Estate*, 98 Mont. 141, 38 Pac. (2d) 277; *In re Williams' Estate*, 50 Mont. 142, 145 Pac. 957; *In re Cummings' Estate*, 92 Mont. 185, 11 Pac. (2d) 968, 971; *In re Noyes' Estate*, 40 Mont. 178, 105 Pac. 1013), but the statutes of this state and "their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice" (sec. 4, Rev. Codes), that the purpose of the statute in prescribing formalities for the execution of wills "is to make sure that the testator is aware that he is making a will, and that he be not imposed on and procured to sign a will when he supposes it to be some other instrument." (*In re Miller's Estate*, 37 Mont. 545, 97 Pac. 935, 941.) *In re Williams' Estate*, 50 Mont. 142,

155, 145 Pac. 957, 960, is to the same effect. Volume 68, Corpus Juris, page 650, we think gives full expression to the general ▓ rule on the subject in this language: ''The purpose of the statute in prescribing the formalities for the execution of wills is to guard against and prevent mistake, imposition, undue influence, fraud or deception, to afford means of determining their authenticity, and to prevent the substitution of some other writing in place thereof.'' We find the substance of this rule in a number of decisions of this court. We deem it particularly important to keep the established purpose of the statute in view in determining whether the will involved here and the acts of the parties at the time of execution show that any purpose of the statute has been defeated or subverted. Some consideration of the question of substantial compliance with statutory provisions, and of the attestation clause of wills, afford an appropriate background and will be given some notice.

In construing a statute and determining its proper application and effect, this court has repeatedly held that all that is required is that it be substantially complied with. ''While the requirements of the statutes as to the formalities in executing a will must be scrupulously followed in all essential particulars, and with substantial precision, it has very generally been held that substantial compliance therewith is sufficient, especially where there is no suggestion of fraud, deception, undue influence, or mental incapacity.'' (68 C. J. 651, sec. 276.) ''Bearing in mind that the main object of such legislation is to repel fraud and establish a bona fide testament, we may assume that a substantial rather than a literal compliance with the statute formalities is sufficient.'' (*In re Miller's Estate,* supra.)

The California decisions are in substantial harmony with ours. ''Here we have the fact that the testatrix made her mark to the instrument, the declaration that it was her will and testament, made in the presence and hearing of the witnesses, and the fact that the witnesses subscribed the same at her request in her presence, and in the presence of each other. * * * We think

this was sufficient." (*In re Estate of Emart*, 175 Cal. 238, 244, 165 Pac. 707, 710, L. R. A. 1917F, 866.) All the essentials mentioned in this California case were complied with in the execution of the will involved here.

On the evidentiary value of the attestation clause as to due execution, no particular attestation clause is prescribed by statute, but the clause attached to the will in the instant case is complete and that which is generally in use. The attestation clause is a certificate certifying as to the facts and circumstances attending the execution of the will (6 C. J. 555), and in event the witnesses are not available by reason of death or otherwise to give testimony in proof of the probate of the will, it has evidentiary value in establishing due execution. In volume 1 of Bancroft's Probate Practice, at page 383, it is said: "If the attestation certificate is in due form, there is a presumption from that fact alone that the instrument was duly executed as a will." In a note in 76 A. L. R. 617, it is said: "It is a well established rule that a complete attestation clause reciting an observance of all statutory requirements raises a presumption of the due execution of a will if there is no contest as to the genuineness of the signatures of the witnesses, or that of the testator, or after these signatures are proved to be genuine." In support of this annotation, decisions are cited from sixteen states and from England. A large number are from New York. No question is raised here as to the genuineness of the signature of the testatrix or of either witness, and no doubt exists on that point (See, also, *In re Sniffin's Will*, 113 Misc. 307, 184 N. Y. Supp. 538; *In re Silver's Estate*, supra; *In re Cummings' Estate*, supra; *In re Estate of Warren*, 138 Or. 283, 4 Pac. (2d) 635, 79 A. L. R. 389.)

Coming now to the decisive questions involved, to make a valid will the law as given in section 6980, Revised Codes, must be complied with. It provides: "Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will, and a nuncupative will, must be executed and attested as follows:

"1. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto;

"2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;

"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

"4. There must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request, and in his presence."

In the judgment of the trial court, the testatrix in the instant case failed to comply with the statute in the particulars indicated in the following findings and conclusions of law:

"The court finds: 1. The instrument purporting to be the last will and testament of said decedent was not subscribed by her in the presence of the subscribing witnesses thereto, or either of them, and neither did the said decedent, at the time the attesting witnesses subscribed their names thereto, or at any other time, acknowledge to the said attesting witnesses, or to either of them, that she had subscribed her name thereto.

"2. The subscribing witness Virginia Davis did not see the signature of the decedent upon said instrument either prior to or at the time she subscribed to the same as an attesting witness.

"3. The evidence is insufficient to show that the subscribing witness M. J. O'Connell, either prior to or at the time he subscribed said instrument as an attesting witness, saw the signature of the decedent subscribed to said instrument.

"4. That the said decedent, in the presence of Virginia Davis, requested the witness M. J. O'Connell to witness the said instrument as her will and pursuant to her request did sign his name to the attestation clause attached to said will.

"5. The said M. J. O'Connell, in the presence of the decedent, and at her suggestion that another witness was necessary, requested Virginia Davis to sign said instrument as an attesting

witness, and that the said Virginia Davis, pursuant to said request did sign said instrument as a subscribing witness in the presence of the decedent and M. J. O'Connell and that Virginia Davis heard the decedent request M. J. O'Connell to witness her will.

"6. At all times herein mentioned the said decedent was of sound and disposing mind and was not acting under duress, fraud or undue influence, and was in all respects competent to dispose of her property by will.

"The court concludes, as a matter of law:

"1. That the declaration of the decedent to the attesting witnesses that said instrument was her will, was not sufficient to satisfy the additional requirements of subdivision 2 of section 6980, Revised Codes of Montana, 1935.

"2. That the proof offered is not sufficient to establish the said instrument as the last will and testament of said decedent."

Findings 4 and 5 are supported by a preponderance of the evidence and eliminate any question about the testatrix having requested the witnesses to attest the execution of her will, and also eliminate any question about the signatures of the witnesses being genuine. Finding numbered 6 is likewise supported by a preponderance of the evidence and eliminates any question about the competency of testatrix to make a will, and establishes her freedom from duress, fraud, and undue influence, and the record shows nothing that brings in question the genuineness of the signature of testatrix at the end of the will. The testimony of the witness O'Connell is sufficient to verify the signature of testatrix. This leaves the court's findings 1, 2, and 3 and the two conclusions of law for consideration.

We find plaintiffs' cross-assignment of error, predicated on finding No. 5, to be without merit. We think that part of finding 1, where it is stated that the testatrix did not subscribe the will in the presence of the attesting witnesses is supported by a clear preponderance of the evidence, but we are also of the opinion that conclusion 1, which is obviously founded upon the other part of finding 1, to the effect that the testatrix did not acknowledge "that she *had* subscribed her name thereto," is

error. The fact that the will had been signed before it was attested by the witnesses made it incumbent upon testatrix to acknowledge having signed the will at the time the witnesses attested the same. The error arises from the obvious conclusion of the court that the execution or the signing of a will that has not been signed in the presence of the attesting witnesses, can be legally acknowledged only when such acknowledgment is made verbally. This precise question has never been before this court for decision, but it has been passed upon by many other jurisdictions, and there is a very decided lack of harmony in the adjudications.

Numerous and able opinions have been written holding that the acknowledgment must be made verbally, but we think the better-reasoned cases support the rule that, ''As is true in respect of publication and request to witnesses, acknowledgment of subscription may be established by proof of words, gestures or conduct which give the witnesses to understand that the signature was that of the testator.'' (26 Cal. Jur. 779, sec. 114.)

It is our view that the acknowledgment may be established by circumstantial evidence equally as well as by spoken words. The lives of many human beings have been declared forfeit on circumstantial evidence, and the protection and perpetuation of human life is of first consideration to the law. We can conceive of no sound reason why more positive evidence should be required in the acknowledgment of a will than is necessary to justify the state in taking human life. True, it has often been held that the statute relating to the execution and acknowledgment of a will must be strictly construed. Strict construction means nothing more than that a statute is not to be construed beyond its natural meaning. (Sutherland on Statutory Construction, 2d ed., sec. 454.) The statute here does not restrict acknowledgment literally to spoken words. Furthermore, section 4, supra, enjoins upon this court the clear obligation to construe our statutes liberally in the interest of justice. In compliance with such obligation we hold that the acknowledgment of a testator to a will may be made in any manner that conveys to the mind of a witness of reasonable in-

telligence the testator's intention to acknowledge its execution. Acknowledgment of the will necessarily acknowledges the testator's signature thereon, but an acknowledgment other than by spoken words must be made in some unmistakable manner. We have held that it is not necessary that a testator expressly request one to witness his will, nor expressly declare the instrument to be his will, so long as he informs the witnesses at the time of the attestation in some manner that the instrument is his will and he desires that they witness it. (*In re Silver's Estate,* supra; *In re Cummings' Estate,* supra; *In re Williams' Estate,* supra.) And we think the acknowledgment may be legally made in the same manner as the requirements just mentioned.

"Nothing can be more explicit than the law of 1830. (2 R. S. 7, 40.) Four distinct ingredients, as declared, must enter into, and together constituting one entire, complex substance, essential to the complete execution [of a will]: 1. There must be a signing by the testator at the end of the will. 2. The signing must take place in the presence of each of the witnesses, or be acknowledged to have been made, in their presence. 3. The testator at the time of signing or acknowledging the writing, shall declare it to be his last will; and 4. There must be two witnesses. Now, it is obvious, that every one of these four requisites, in contemplation of the statute, is to be regarded as essential as another; that there must be a concurrence of all to give validity to the act, and that the omission of either is fatal. * * * I agree that no form of words will be necessary; that the legislature only meant there should be some communication to the witnesses indicating that the testator intended to give effect to the paper as his will. Any communication of this idea, or to this effect, will meet the object of the statute. It would be unwise, if not unsafe to speculate upon the precise mode of communication; as every case must depend upon its own particular circumstances. * * * When we come to that, the only sure guide for the courts will be to look at the substance, sense, and object of the law, and with the aid of these lights, endeavor to ascertain if there has been a substantial compliance.

I agree, also, that the mere want of recollection of the witnesses that the testator indicated the instrument to be his will, after signing the attestation clause, ought not to be evidence per se of non compliance with the statute." (*Remsen* v. *Brinckerhoff*, 26 Wend. N. Y. 325, 37 Am. Dec. 251.)

"When, however, the testator produces a paper, to which he has personally affixed his signature, requests the witnesses to attest it, and declares it to be his last will and testament, he does all that the law requires. It is enough that he verifies the subscription as authentic, without reference to the form in which the acknowledgment is made; and there could be no more unequivocal acknowledgment of a signature thus affixed, than presenting it to the witnesses for attestation, and publishing the paper so subscribed as his will. [Citing cases.]" (*Baskin* v. *Baskin*, 36 N. Y. 416.)

"While it is necessary that the testator should either sign his name in the presence of witnesses or should acknowledge his signature thereto in their presence, it is not necessary that the testator acknowledge his signature in express words. He may acknowledge it by acts and conduct." (*In re Herring's Will*, 152 N. C. 258, 67 S. E. 570.)

"Where a will is not signed by testator before an attesting witness, but it is produced by testator with testator's signature visible thereon, and testator then acknowledges to the witness that the instrument is testator's will, a distinct acknowledgment of the testator's signature is necessarily involved in the testator's acknowledgment of the will and the request to witness same. * * * The best recollection of the second attesting witness is that two signatures were on the will when he signed. This is enough in this cause to establish that he saw testator's signature." (*In re Nussbaum's Estate, Sur.*, 144 N. Y. Supp. 443, 444.)

We agree with the New York case just cited, that when one acknowledges a will to be his he necessarily acknowledges that his signature is thereon. A blank piece of paper containing devises and bequests that one intends to make is not his will,

unless it bears his signature, any more than a promissory note or a bank check is one's note or check before he signs them.

"All the attending facts and circumstances should be considered in order to determine whether the statute has been substantially complied with so as to carry out the intent with which it was adopted." (*In re Miller's Estate,* supra.)

"That the instrument is the will of the testator may be shown by acts and conduct, and the request for the witnesses to sign it may come from another if there be intelligent acquiescence by the testator." (*In re Cummings' Estate,* supra.)

Recent decisions from California and New Jersey are in harmony with the views here expressed. In *In re Estate of Abbey,* 183 Cal. 524, 191 Pac. 893, where a case was appealed from a finding of the trial court that the testatrix did not sign the will in the presence of either of the subscribing witnesses and did not acknowledge her signature to them, the court held: "The signature of the testatrix is on the same page as that of the subscribing witnesses, and no doubt the signature was visible to the subscribing witnesses at the time each signed the will. The request that these persons sign the will as 'subscribing witnesses' was in effect an acknowledgment of her signature to them."

"It is the settled rule that the technicalities of the law relating to the making of wills are deemed to have been satisfied where the circumstances surrounding the transaction show a substantial compliance, and that that compliance need not consist of words or even gestures, but may find its logical expression in silence and acquiescence. This is particularly true as regards the acknowledgment of the signature. 'The acknowledgment is not required to be made in any particular words or in any specified manner, but if, by sign, motion, *conduct or attending circumstances,* the attesting witness is given to understand that the testator had already subscribed the instrument, it is sufficient acknowledgment.' * * *

"'As to request to sign as witnesses—the request may be words or signs. It may be implied. For instance, if I am about making a will, it is a good request if I by words make the

request; it is good, if the request is made for me by another, I understanding the matter and acting in accordance with the making of the request. No particular form of request is necessary. It may be implied from acts. Anything which conveys to the witnesses the idea that I desire them to be witnesses is a good request. Even a knowing acquiescence may be equivalent to an actual request in words.' (*Estate of Howard Crittenden*, [Cal.] Myr. Prob. [50] 54, 55.) 'The request need not be formally expressed in words; an act or sign will suffice, and it may be made either by the testator himself or by some one acting for him, in his presence and hearing.' (Beach on Laws of Wills, sec. 46), and a large number of authorities cited in notes 2 and 3.'' (*Estate of Williams*, (Cal.) 5 Coffey's Probate Decisions 1. See, also, *In re Halton's Estate*, 111 N. J. Eq. 143, 161 Atl. 809, 813; *In re Cook's Estate*, 113 N. J. Eq. 255, 166 Atl. 32.)

Our section 6980 having had its origin in the British Parliament, the decisions of the English courts on the question under consideration are of interest. Jarman on Wills, seventh edition, by Charles P. Sanger, Barrister of Lincoln's Inn, London, on the subject of ''Acknowledgment of Testator's Signature,'' gives a summary of such decisions at pages 101, 102, volume 1, as follows:

''The statute 1 Vict. c. 26, placed the law with regard to the acknowledgment of wills on a new footing. The signature of the testator is to be 'made' or 'acknowledged' (the 'signature,' and not, as formerly, the 'will,' being the subject of acknowledgment) in the simultaneous presence of the witnesses, whereas formerly the signature might be 'made' before one, and the will acknowledged before the rest, or acknowledged before all the witnesses separately, without any of them having seen the signature. As to this point, the following decisions have been made with regard to acknowledgment:

'' (a) The signature to be acknowledged may be made by the testator, or by another for him.

'' (b) A testator, whether speechless or not, may acknowledge his signature by gestures.

150

"(c) There is no sufficient acknowledgment unless the witnesses either saw or might have seen the signature, not even though the testator should expressly declare that the paper to be attested by them is his will.

"(d) When the witnesses either saw or might have seen the signature, an express acknowledgment of the signature itself is not necessary, a mere statement that the paper is his will, or a direction to them to put their names under his, or even a request by the testator, or by some person in his presence, to sign the paper, is sufficient.

"(e) When the signature is seen or expressly acknowledged, it is not material that the witnesses are not told that the instrument is a will, or are deceived into thinking that it is a deed.

"(f) It is of course sufficient, on a re-execution, merely to acknowledge the signature made on a former execution."

At page 109 of the above work the attestation clause is discussed as follows: "A form of attestation is expressly dispensed with by the statute 1 Vict. c. 26. No particular form of words was essential even under the old law to constitute an attestation. And accordingly, probate has been granted of a will where both the witnesses deposed that the requirements of the Act had not been complied with, the court being satisfied by the circumstances that the evidence was mistaken; and in another case, where the witnesses deposed, but not positively, their evidence was allowed to be rebutted by that of another person present at the execution, assisted by the attestation clause, whence it appeared that the requirements of the statute had been complied with, and in a case where the attestation clause stated that the will was signed in the presence of the attesting witnesses, and it appeared from the evidence that it was only acknowledged in their presence, having been signed before they were called in, probate was granted. But where there was nothing but a formal attestation clause on one side, and the adverse testimony of both witnesses on the other, probate was refused."

The decisions of New Jersey are also of more than passing interest and touch upon the important questions involved in

the case at bar. The statutes of that state are in substance the same as our own. In the case of *In re Halton's Estate,* supra, one of the two witnesses testified, when probate was sought, supporting the will in all essentials; the other witness testified that practically none of the statutory requirements were observed and, when he subscribed the paper, he did not know it was a will. The court said: * * * "Dr. Bierach, testified that the paper writing was neither signed in his presence nor the signature thereto acknowledged by the decedent; that he was not requested by the testator to sign as a witness; that he did not know that the paper which he signed as a witness was supposed to be a will; and that the decedent did not in any manner declare it to be his will until after both witnesses had signed. * * * No case is found in this state where there are two witnesses to a will and no attestation clause, one witness testifying to the due execution of the will and the other to the omission of some legal formality, in which the will has been denied probate; but there is ample authority for admitting such a will to probate on the testimony of one subscribing where the circumstances are persuasive to its truth, as here." The lower court was reversed and the will admitted to probate on the testimony of one witness. This case was cited with approval in the later one of *In re Cook's Estate,* supra, where practically the same question was involved.

The English rule appears to be that, if the testator presents his will to the witnesses for their attestation, already signed, declares the instrument to be his will, and does not deliberately prevent the witnesses from inspecting the paper to see if he has subscribed the same, it is sufficient under the rule mentioned in Jarman, without express acknowledgment of the subscribing, if the witnesses saw, or "might have seen," the testator's signature to the will. We have found no English case in which the will has been admitted to probate where the testator's signature was subscribed to the will out of the presence of the attesting witnesses, unless the testator either expressly acknowledged his signature thereto or the witnesses saw or "might have seen" his signature thereon. The "might have seen" his signature

doctrine has not been accepted in any jurisdiction in this country, so far as our knowledge extends. We regard such rule as far more liberal than the rule adhered to in the instant case, which accepts as an acknowledgment of the signature to the will the declaration of the testator publishing the instrument as his will.

The court's finding numbered 2 is founded upon and clearly supported by the testimony of the witness Davis herself. The fact that the witness did not see the signature of testatrix when the witness attested the will does not destroy the status of Virginia Davis as an attesting witness under the rule to the effect that acknowledgment of the will by the testator is equivalent to acknowledgment of the signature to the will. Neither does the fact of failure to see the signature of the testatrix to the will destroy *in toto* the status of this witness under the rule that the attestation is to the signature only, not to the will as a whole. Under the latter rule, in accordance with the attesting clause, and from necessity, the attesting witnesses bear witness to things, in attesting the will, other than the signature of the testator.

The testimony of the two witnesses here clearly establishes, among other things, the fact of publication of the will, and prima facie establishes the testamentary capacity of testatrix, and is valuable in presenting the circumstances attending execution. Virginia Davis signed as an attesting witness just after the witness O'Connell signed, in his presence and in the presence of the testatrix. The genuineness of the signature of neither the testatrix nor of either witness is in question, and the testimony of one witness entitles the will to probate. "The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason." (Sec. 10505, Rev. Codes; *In re Silver's Estate,* supra.)

The testimony of the witness M. J. O'Connell, in so far as "full credit" is concerned, may be summed up from the following portion from the first page thereof as it appears in the record:

"Mrs. Bragg came to my place of business. She brought this will in for me to sign and asked me if I would sign her will. I read the will over before I signed it; I would not swear that her signature was appended to it at the time. I am quite sure it was but I could not exactly swear to it, but I think it was there.

"Q. Well, to the best of your knowledge, was it there? A. Well, I would say it was there, if I was going to swear. I signed the will right there as a witness. Miss Virginia Davis was present when this conversation was going on."

The witness had a peculiar notion about giving testimony, as distinguished from swearing to it, and also showed a very poor memory. All testimony is given and received on the theory that it is given according to the best memory of the witness; more cannot be required. The rule on the defective memory of an attesting witness we think fairly expressed in *Abbott* v. *Abbott*, 41 Mich. 540, 2 N. W. 810, 811, where it is said: "We know of no rule of law which makes the probate of a will depend upon the recollection * * * of a subscribing witness." Our decisions are in harmony.

O'Connell's testimony was given in a halting and obviously confused way, but on the whole was consistent, and the witness obviously was anxious to recount the facts exactly as they occurred. This testimony was corroborated by the other witness, and the only serious objection to the testimony of the latter was the fact that she did not see the signature of the testatrix to the will, nor read the attesting clause. O'Connell, on direct, testified that he read the will, but on cross-examination testified he read the attesting clause and glanced through the will. Again he testified that he did not know every detail of the will, that he glanced through it but did not read it over thoroughly.

Virginia Davis on direct testified in part: "I am the other witness on the will of Sallie Marston Bragg; I knew her before she came in; I recall her coming into the laundry on August 5, 1936; she said she had her will and she wanted—she asked for Mr. O'Connell in the first place, and she wanted us to sign her will; I heard her say she wanted me to sign her will. Mr.

O'Connell called me and asked me to act as a witness to the will. I did not look over the will before I signed, but I heard her say that was her will; I could not swear that her signature was on the will at the time I signed it. My witnessing was on another page." This testimony was varied but not materially impaired on cross and redirect examination.

It appears quite clear to us that while the witnesses contradicted themselves to some extent in the testimony given on direct and cross-examination, yet such contradiction arose from defective memories, and not from any intent to give false evidence. There is nothing in the record to justify the conclusion that they were untruthful. We are satisfied that the substance of their testimony fully justifies the estimate we have placed upon it, and that the order of the court denying probate of the will was contrary to a clear preponderance of the evidence.

Findings 4, 5, and 6 clearly show that the trial court gave full credit to the testimony of the witnesses as to the request of testatrix to O'Connell, in the presence of Virginia Davis, to attest her will; that O'Connell signed the attestation clause pursuant to such request; that at the suggestion of the testatrix O'Connell requested Virginia Davis to sign the will, and pursuant thereto she signed as an attesting witness in the presence of O'Connell and the decedent; this was a legal request to Virginia Davis (*In re Williams' Estate,* supra) ; that the decedent was possessed of full testamentary capacity and was not acting under duress, fraud, or undue influence. These several findings clearly recognize the sufficiency of the testimony of both the attesting witnesses in establishing the facts just recounted, and therefore give legal status to both attesting witnesses to the will that was presented in court as the will of the testatrix, and, the instrument having been acknowledged by the testatrix to be her will at the time the attesting witnesses subscribed their names thereto, and in their presence, there was a substantial, if not ideal, compliance with the requirements of the statutes.

Under the English rule, both witnesses here could qualify as competent witnesses, as both saw or "might have seen" the signature of testatrix, no evidence being shown by the record in

the case at bar that there was any attempt by the testatrix to prevent either from examining the contents of the will. We prefer the rule which holds that the acknowledgment that the instrument is the testator's will is an acknowledgment that the testator has signed it. It appears to us that the latter rule lessens the opportunity of a designing witness, or one with a defective memory, to defeat the intentions of the testator; and we are further of the opinion that the rule we adhere to is more in accord with the better-reasoned decisions in jurisdictions where the statutory requirements are like or similar to ours.

In the case at bar, plaintiffs' contention that, by the established rule, this court is concluded by the findings of the trial court, is not a rule to be followed blindly and without exception, and is usually applicable only where there is conflicting evidence. There is no conflict in the evidence here, except such as might be said to arise from the variations heretofore mentioned between the testimony of the attesting witnesses on direct and cross examinations. The power vested in this court to review decisions carries with it the power to revise, reverse or remand any decision that we believe to be contrary to the evidence, and our conviction is to that effect in this case.

Counsel strongly depend upon the case of *In re Will of Mackay*, 110 N. Y. 611, 18 N. E. 433, 434, 6 Am. St. Rep. 409, 1 L. R. A. 491, an outstanding case frequently cited. It is almost in direct conflict with our conclusions in the case at bar, but there are differences which in a measure exemplify the rule that each decision must stand upon its own facts and circumstances. In that case Father Mackay called two friends to his place of dwelling, took an instrument from his desk, and, having previously advised them he desired their presence for the purpose of witnessing his will, said, "It is now all ready, awaiting your signature." He then presented the instrument to the witnesses for their signatures, but handed it to them so that they could see no part of the writing except the attestation clause. The signature and seal were not visible. The will was denied probate. The court held: "Subscribing witnesses to a will are required by law, for the purpose of attesting and identifying the

signature of the testator, and that they cannot do unless at the time of the attestation they see it.'' This is one of the cases that holds the attestation is of the signature only, and differs from the case at bar in that neither of the witnesses saw the testator's signature on the will in the *Mackay Case*, and we have heretofore given our opinion as to what the attestation comprises, and that the acknowledgment by the testator that an instrument is his will includes the acknowledgment that his signature is subscribed thereto. It is of importance here to note that in the *Mackay Case* the court said: ''There would undoubtedly have been a formal execution of the will in compliance with the statutes, if the witnesses had at the time seen the . signature of the testator to the will.'' Such part of that decision implies that if the witnesses had seen the testator's signature to the will, it would not have been necessary for the testator verbally to acknowledge such signature, but in a quotation from another decision the court in a measure contradicts the part of the opinion here quoted.

The Montana case of *In re Williams' Estate,* supra, liberally quoted from by the plaintiffs, is of little value here on the question of due execution, as the testimony of the attesting witnesses in that case clearly established these facts: Neither saw the testator's signature to the will; the testator handed the instrument across the table to the attesting witnesses without suggestion as to what it was, and neither the testator, nor anyone else present, mentioned anything about the paper that was being signed. Summing up the matter the court there said: '' 'The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will.' [Citing cases.] Such declaration, it is true, need not be in words. Where, for instance, the testator is rational, the will is read to and signed by him in the presence of witnesses, and they, in his presence and with his intelligent acquiescence, are requested by another to attest the same and do so, the requirements of the statute have been sufficiently met. [Citing cases.] It is imperative, however, that the witnesses, at the time they attest, be informed in some way by the testator

himself that the instrument he has subscribed is his will.'' We see nothing in this summing up in the *Williams Case* that is in conflict with our conclusions here.

Counsel cite authorities giving no little weight to the attesting clause of the will, but then state that both witnesses repudiate the attesting clause here. It is true that Virginia Davis admitted she did not read the attesting clause, but neither witness repudiated the attesting clause in the sense counsel contend for. The attesting clause certifies some ten or more things that were done by the testatrix and the witnesses, or that certain facts existed, and all the things certified to are established by the evidence, except that instead of the testatrix signing the will in the presence of the witnesses, she presented the will to the witnesses for attestation already signed. This is not a repudiation and not a materially incorrect statement. In view of all the circumstances, we think the attestation clause certifies the facts as they substantially occurred.

Many of the decisions found in the books assert that the right to make testamentary provision to dispose of property depends entirely upon the statutes. This is true to the extent that the right is regulated by statutes, but the right itself is of ancient origin. (28 R. C. L. 67; 68 C. J. 413.)

The cause is remanded to the district court, with instructions to revoke the order denying probate to the will and to admit it to probate.

ASSOCIATE JUSTICES STEWART, ANDERSON and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS, Dissenting:

### Statement of the Case.

This is an appeal from an order disallowing probate of the purported last will and testament of Sallie Marston Bragg, deceased, because of its alleged improper execution. Contestants are natural heirs of the deceased. Contestee Helen Daems is

158

a devisee named in the purported will, and contestee L. R. Daems is the purported named executor.

The executor filed his petition for probate of the purported will on March 4, 1937, which was set for hearing on March 15 thereafter. On this latter date the testimony, in affidavit form, of the subscribing witnesses, M. J. O'Connell and Virginia Davis, was filed. These affidavits were of the usual form, in that they set forth the testimony of the witnesses, stating that the will was executed within the prescribed statutory requirements. On the same day the contestants, by their attorney, filed written opposition to the purported will, praying that the same be not allowed to probate. Contestees filed answer to the written objections, and a hearing was had the same day. Thereafter the trial court granted contestants' motion to strike the aforementioned affidavits of the subscribing witnesses from the files, for the reason that their oral testimony at the hearing did not conform to such written testimony. Findings of fact and conclusions of law were filed by the trial judge, upholding contestants' opposition to the will, and his order in conformity therewith was filed.

It appears from the record that about August 15, 1936, Sallie Marston Bragg appeared at the place of business of M. J. O'Connell at Bozeman, Montana, with a typewritten document intended as her last will and testament. The document consisted of two typewritten pages; the first page included the entire body of the will, together with the place for the signature of the testatrix; the second page contained only the attestation clause, together with places for the signatures of the required witnesses. Her mission was to have Mr. O'Connell act as a witness to her will.

Mr. O'Connell testified at the hearing as follows: "Mrs. Bragg came to my place of business. She brought this will in for me to sign and asked me if I would sign her will. I read the will over before I signed it. I am quite sure it [her signature] was there but I could not exactly swear to it, but I think it was there." He further testified that he did not see Mrs. Bragg sign the will, and that she did not say that it was her

signature, or one made at her request, which appeared on the will when he signed as witness.

Virginia Davis, the other subscribing witness, and who was Mr. O'Connell's secretary, testified as follows: "I recall her [Mrs. Bragg] coming into the laundry on or about the 15th day of August, 1936. At the time she came in, she said she had her will and wanted—she asked for Mr. O'Connell in the first place, and she wanted us to sign the will. I could not say that I heard all of the conversation which took place between Mr. O'Connell and Mrs. Bragg, but I heard her say that she wanted me to sign her will, and that she needed another witness to the will. Mr. O'Connell called me and asked me to act as a witness to the will. I did not look over the will before I signed, but I heard her say that that was her will. I could not swear that her signature was on the will at the time I signed it. My witnessing was on the other page. There was not anything said there except that this was her will but she did say that it was her will. She did not *tell* me that *she had signed it*." In answer to direct examination as to whether she heard Mrs. Bragg tell Mr. O'Connell that she [Mrs. Bragg] had signed the will, the witness Davis answered: "I don't believe I did."

The trial court found that Mrs. Bragg did not subscribe the will in the presence of the witnesses, nor did she acknowledge to them that she had subscribed her name thereto previously.

The contestees' (appellants here) assignments of error present two propositions to be answered by this court: First, whether there was error in striking the written testimony of the subscribing witnesses from the record; and, second, whether the purported will of Sallie Marston Bragg was properly executed so that it should have been admitted to probate.

### Opinion of the Dissenting Justice.

1. In considering the first proposition, we fail to see any error in the trial court's action. It is the usual probate practice to reduce to writing, in affidavit form, the testimony of the subscribing witnesses who appear at the hearing to prove the will.

Such written testimony sets forth statements showing that all the necessary steps for the proper execution of the particular will were carried out. Such were the contents of the affidavits stricken by the trial court in the case at hand.

After reading the oral testimony of the two subscribing witnesses given at the hearing, there is no question but that the stricken affidavits contained untrue statements regarding the actual execution of the Bragg will. The affidavits being untrue, we agree with the trial judge that they could serve no purpose in the probate records, and therefore no error or prejudice was committed by expunging them.

We can find no statute making it mandatory that where both subscribing witnesses are present at the hearing to prove the will their testimony must be reduced to writing, in affidavit form. Especially are we unable to find statutory demands that *untrue* affidavits of the subscribing witnesses must be filed.

Sections 10032 to 10038, Revised Codes, prescribe the method for contesting wills and the procedure for hearings on such contests. Section 10035 provides that all subscribing witnesses living within the county shall be examined. Section 10036 provides that their testimony, reduced to writing, shall be good evidence in any subsequent contests. Obviously, this latter section does not contemplate that untrue testimony of the subscribing witnesses, in the form of written affidavits, and which, in fact, are not true transcripts of their testimony given at the hearing, shall be preserved in the records.

2. Now, taking up the major matter of this appeal, we come to the question whether or not the purported will was properly executed under the prescribed steps of section 6980, Revised Codes. I think that it was not. Under our past decisions, all that need be found to nullify a will on the ground of improper execution ·is *substantial* evidence. (*In re Cummings' Estate,* 92 Mont. 185, 11 Pac. (2d) 968; *In re Silver's Estate,* 98 Mont. 141, 38 Pac. (2d) 277.) It is my opinion that the evidence in this case *preponderates* that the will was· improperly executed.

Section 6980, supra, provides:

"Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will, and a nuncupative will, must be executed and attested as follows:

"1. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto;

"2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;

"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

"4. There must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request, and in his presence."

There have been many Montana cases which have had for consideration the interpretation of this section, but none which have presented the exact problem now before us. We obtain from my study of these past cases an unbending adherence to a strict and literal construction of all the provisions of this section. We have the cases of *In re Miller's Estate,* 37 Mont. 545, 97 Pac. 935; *In re Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013, 1015; *In re Williams' Estate,* 50 Mont. 142, 145 Pac. 957; *In re Cummings' Estate,* supra; and *In re Silver's Estate,* supra, which, throughout the years have closely construed subsection 3, and demanded that by some means the maker of the will *must* acknowledge and publish to the witnesses the fact that the instrument is his will.

The case of *In re Miller's Estate,* supra, recognized the necessity of conforming to the requirements of subsection 1, as to the method of signing. The same case, and also the cases of *In re Noyes' Estate, In re Cummings' Estate,* and *In re Silver's Estate,* supra, likewise have been unchanging in requiring the provisions of subsection 4 to be complied with. And, as before stated, the court is now called upon for the first time to interpret the meaning of subsection 2, and to determine what constitutes a compliance with its mandates.

In the first place, we obviously would be guilty of judicial legislation if we were to rule that in executing a will, a testator may properly overlook subsection 2. Moreover, there is little difficulty in interpreting just what step in the orderly execution of a will this subsection demands. Even if we were to apply loose and liberal rules of construction, we would be unable to say that the maker of the will must do anything less than this subsection 2 in simple, unequivocal language says he must do. He must do either of two things: He must either sign his name in the presence of the two subscribing witnesses; or, if he signs beforehand, he must acknowledge to the subscribing witnesses that he has signed, and that the signature is his signature. I do not agree with the opinion of the majority that an acknowledgment or publication of the will, where the testator remarks, "This is my will," also acts as an acknowledgment of the signature which was subscribed outside the presence of the witnesses. The legislature exercised great caution to place in separate paragraphs the various steps for the execution of a will. Paragraph 3 (subsec. 3) says the *will* itself must be published. Paragraph 2 (subsec. 2) says that the *subscription* must be acknowledged. The legislature having been as explicit as possible in requiring two separate acts, can this court wisely say that the performance of either of the two prescribed steps automatically fulfills the other? I think not.

For the sake of emphasis, and for the guidance of future will makers, I think it proper to restate the reason for this court's careful views in saying what constitutes a proper execution of a will. To restate such reason, I can think of no better language than that which appears in the case of *In re Noyes' Estate,* supra, which I quote: "The right to make a testamentary disposition of property is not an inherent right; nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the Legislature, as expressed in the statute enacted on the subject. It can withhold or grant the right, and if it grants it, it may make its exercise subject to such regulations and requirements as it pleases. It may declare the rules which must be observed, touching the execu-

tion and authentication of the instruments necessary to indicate the testator's intention and make a compliance with them mandatory. (*In re Walker's Estate,* 110 Cal. 387, 42 Pac. 815 [1082], 30 L. R. A. 460, 52 Am. St. Rep. 104.)'' The court there also quoted with approval language appearing in the California case of *In re Walker's Estate,* supra, which we think is again worthy of emphasis. The California court said:

'' 'It is not for the courts to say that these requirements, or any of them, are mere formalities, which may be waived without impairing the status of the instrument. It is not for courts to say that a mode of execution or authentication, other than that prescribed by law, subserves the same purpose, and is equally efficient to validate the instrument. The legislative mandates are supreme, and there is no right to make testamentary disposition except upon compliance with those mandates. It may be freely conceded that the question under consideration is of a nature purely technical, but it is to be remembered that the whole subject-matter of the execution and authentication of wills is technical, and nothing else; and it must not be forgotten that the technicalities are those which the law-making power has the right to impose, and has imposed, upon the maker of a will.'

''The purpose of the formalities prescribed is to prevent simulated and fraudulent writings from being probated and used as genuine. While the application of the strict rule of construction may sometimes defeat the intention of the testator as manifested by an imperfectly executed and authenticated writing, yet in the long run such statutes tend to promote justice, by lessening, so far as possible, the opportunity for fraud, which history and experience have demonstrated to be feasible and measurably safe in the absence of them. ([*In re*] *Estate of Seaman,* 146 Cal. 455, 80 Pac. 700, 106 Am. St. Rep. 53 [2 Ann. Cas. 726].) After the writing is shown to have been executed and authenticated by observance of the technical requirements which the legislature has imposed, then the instrument will be construed liberally in order to give effect to the testator's intention. Upon the application for probate, however, the sole in-

quiry about which the court is concerned is whether these requirements have been complied with. The courts may not, therefore, out of regard for the supposed intention of the testator, however clearly it may be manifested by the attendant circumstances, adopt a rule which would open the way for the same frauds which the statute was designed to prevent. The restrictions made by it are reasonable and easily understood, and, as experience has shown, it is far safer for society that a rule be adopted that requires a strict compliance with them, and, as a consequence, that occasionally an honest attempt to execute a will be defeated, than that the protections thus thrown about the testator should be disregarded because of an undue respect for his intentions, and the way be left open for the multitude of frauds and perjuries which would result.''

Jurisdictions which have a statute similarly worded as our section 6980, providing a definite method for executing wills, have all been strict in their constructions. The Montana supreme court has heretofore demanded that all the prescribed statutory steps in executing a will be fulfilled. There seems to be no new or pressing reason for this court, and other courts, to begin a relaxation of such doctrine of strict construction. The reason for such a doctrine is the same today as when this state and other states patterned their law on the execution of wills after that of 1 Victoria. On the contrary, it would be more logical and sound to argue that our decisions on this phase of the law should become more strict as the years pass. At least, it would not be fallacious for us to reason that the laymen and lawyers alike are wiser today than they were fifty years ago on the subject of will making, because of our previous decisions, and, therefore, the technical requirements should be easier for them to follow.

The factual circumstances on the question of acknowledgment of Mrs. Bragg's signature in the present case, briefly summarized, are as follows: It is undisputed that if Mrs. Bragg signed the purported will, she signed it before she came into the presence of the two witnesses. There is some doubt, seemingly even in the mind of the witness O'Connell, whether he

saw the signature and whether she told him it was hers. But from the testimony of the other witness, Miss Davis, it is clear that she (Miss Davis) did not see the purported signature of Mrs. Bragg, nor was this witness informed by words, action, or innuendo, that there was a subscribing signature on the will, and that, if there was such a signature, it was Mrs. Bragg's. The fact that Mrs. Bragg told Miss Davis that "this is my will" is, under the foregoing statements, not tantamount to an acknowledgment of her purported signature. (See *Lewis* v. *Lewis*, 11 N. Y. 220, where it was stated: "Upon this branch of the statute [same as subsection 2 of section 6980, Rev. Codes], it is the subscription, *not the will*, which is to be acknowledged." This quotation is also cited with approval in the late New York case of *Matter of Redway's Will*, 238 App. Div. 653, 265 N. Y. Supp. 848.)

Although there is considerable doubt in my mind, I will assume, for the sake of this opinion, that there was a proper acknowledgment of Mrs. Bragg's signature by the witness O'Connell. But it is my strong conviction that an acknowledgment of subscription to one of the witnesses only is insufficient. The principal object of this provision is that two witnesses may say, each for himself, from positive knowledge, that the subscription was made by the testator. To this effect is the case of *Mitchell* v. *Mitchell*, 16 Hun, 97, affirmed in 77 N. Y. 596, and quoted with approval in the case of *In re Keeffe's Will*, 155 App. Div. 575, 141 N. Y. Supp. 5, affirmed in *In re Keefe's Will*, 209 N. Y. 535, 102 N. E. 1104. To be a sufficient acknowledgment, it is at least necessary that both witnesses see the testator's signature; this Miss Davis did not do. The leading case on this point is the case of *In re Mackay's Will*, 110 N. Y. 611, 18 N. E. 433, 434, 6 Am. St. Rep. 409, 1 L. R. A. 491, where the court said: "Subscribing witnesses to a will are required by law, for the purpose of attesting and identifying the signature of the testator, and that they cannot do unless at the time of the attestation they see it."

That the California court recognizes the requirement of acknowledgment of the testator's signature, where it was placed,

166

on the will outside the presence of the witnesses, in addition to the necessary publication of the will, see the cases of *In re Emart's Estate,* 175 Cal. 238, 165 Pac. 707, L. R. A. 1917F, 866, and *In re Estate of Lawrence,* 196 Cal. 321, 237 Pac. 738.

The result reached by me in this case is fortified primarily by decisions of the highest courts of the states of New York and California, for the reason that these two jurisdictions have identically worded statutes as our section 6980, and have been as consistent as this court in rigidly enforcing the statutory requirements in will making. I am not interested in decisions of other jurisdictions which have differently worded laws relating to the execution of wills, and especially those that are patterned after the English statute of frauds, which is less technical in its demands. That which will be a valid execution of a will in different jurisdictions depends basically upon the language of their statutes, is stated in Schouler on Wills, fifth edition, section 321. (See, also, 28 R. C. L. 125, and 68 C. J. 694 et seq.)

The order of the trial court should be affirmed.